J-S10022-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANE CHRISTIAN HARBOLD | : | |
| | : | |
| Appellant | : | No. 878 MDA 2020 |

Appeal from the Judgment of Sentence Entered June 23, 2020
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0001372-2019

BEFORE: MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.: **FILED: JULY 12, 2021**

Dane Christian Harbold appeals the judgment of sentence entered following his convictions for Rape by Forcible Compulsion, Strangulation, Unlawful Restraint, and Simple Assault.[1] Harbold challenges the sufficiency of the evidence, the trial court's evidentiary rulings, and the trial court's denial of his request for a jury instruction. We affirm.

By way of background, the trial court summarized the facts giving rise to the charges as follows.

> On the morning of April 25, 2019, [the victim] and Dane Harbold, . . . who had been dating and cohabitating for several months, had an argument: one of a long series of arguments in a deeply dysfunctional relationship. Later that day, the victim sent, and [Harbold] either ignored or failed to receive, a text message to the effect that [Harbold] should find another place to live. That

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 3121(a)(1), 2718(a)(2), 2902(a)(1), and 2701(a)(1).

evening after work, the victim came home to the shared apartment where, much to her surprise and displeasure, she found [Harbold]. The argument escalated. [Harbold] had evidently not heard the victim's call to end the relationship and insisted instead on rifling through the contents of her cell phone in a jealous search for evidence of romantic competitors, real or imagined. The argument finally escalated to physical violence: indeed, to rape.

Trial Court Opinion, filed October 22, 2020, at 1-2 (footnote citations to trial transcript omitted).

Before trial, the Commonwealth filed a motion *in limine* seeking admission of evidence of previous episodes where Harbold had been violent with the victim. The court denied the motion, ruling that the evidence was inadmissible.

At trial, the Commonwealth called the victim as its first witness. The prosecutor asked the victim if she and Harbold had had previous arguments, whether they were arguing in the days leading up to the day of the rape, and what they had been arguing about. **See** N.T., Jury Trial, 2/3/20-2/5/20, at 64-65. The victim testified that Harbold had gotten jealous when she had spoken to a man regarding a job lead, and Harbold "called the guy like 26 times and was physically violent to [her]." **Id.** at 65. Harbold objected and moved for a mistrial. The court denied the motion. **Id.** at 66.

The victim further testified that on the day in question, she was home with her eight-year-old daughter when they realized Harbold had come inside. **Id.** at 67. Harbold demanded, and then took, the victim's phone. **Id.** at 67-68. The victim said she "tried to climb out the living room window onto our porch at least to try to get out. And he caught us, and he caught me and

pulled me back into the living room. And then he took me into [my daughter's] room[.]" *Id.* at 69. The victim testified that Harbold held her down on her daughter's bed and choked her with his hand around her throat. *Id.* When the Commonwealth asked, "At any point did he block your airways, your nose, your mouth?" the victim responded, "Yeah, I believe so." *Id.*; *see also id.* at 107-08 (victim agreeing that she had written, in her statement to the police, that Harbold had covered her mouth and nose such that she could not breathe).

The victim testified that Harbold then told her "that if [she] didn't unlock [her] phone[,] he was going to kill [her], and asked [her] if [she] wanted to die today in front of [her daughter]." *Id.* at 69-70; *see also id.* at 99. Harbold then removed the victim's pants and "just started having sex with [her]." *Id.* at 70. The victim testified that she could not remember if she said anything to Harbold in response, and that she tried "a little bit at first" to get up, "[b]ut at some point, [she] just didn't try to fight it because [she] thought it would make him more violent[.]" *Id.* at 70; *see also id.* at 98-100 (victim agreeing that she "ma[d]e some words or actions that would tend to indicate [she was] enjoying what was going on and that [she was] a voluntary participant," because she "wanted him to finish and be done and let [her] go").

The victim stated that Harbold stopped the rape because her "daughter was outside of the bedroom crying." *Id.* The victim told her daughter to go outside and tell the neighbors to call the police. *Id.* at 72-73. Harbold "pulled up his pants and ran after her," and prevented the victim and her daughter

from leaving. *Id.* at 73-74. Sometime thereafter, the victim was able to grab her phone, run to her car, lock her and her daughter inside, and call 911. *Id.* at 103-04. The Commonwealth played the audio recording of the 911 call to the jury, as well as recordings of other telephone calls to the victim from both Harbold and Harbold's father.

On cross-examination, Harbold confronted the victim with her statement to police and questioned her about whether she had changed the locks on the apartment. *Id.* at 91. He also highlighted that although she had testified that she had texted Harbold that she did not want him at the home and would call police if he were there, no such text messages were in evidence. *Id.* He also asked if she could remember telling the police, on the night of the incident, that she had tried to escape out of a window. *Id.* at 96-97. The victim replied that she could not remember, and Harbold asked her if the police officer's written report would refresh her recollection. *Id.* at 97. The Commonwealth objected, and the trial court sustained the objection. *Id.* Harbold then asked if the victim would be surprised to learn that the police report does not mention an attempt to climb out of a window, and the victim responded, "Yes." *Id.*

The Commonwealth also presented the testimony of Theresa Ressler, the forensic nurse who examined the victim on the day of the rape. Nurse Ressler testified that when she examines a patient, she writes down everything the patient tells her, and any injuries she observes. *Id.* at 118. She stated that she made a report based on her examination of the victim.

- 4 -

*Id.* The Commonwealth requested the report be admitted into evidence, and Harbold objected on the basis that it was "just hearsay recitation of her conclusions . . . ." *Id.* at 119. Harbold clarified that he was not objecting "at this point" to the admission of any "past consistent statements" of the victim. He said that the report could "certainly be used to refresh her recollection if necessary," but that Nurse Ressler could not "just testify" from her report. *Id.* at 120. The court told the prosecutor to ask Nurse Ressler if she needed to refresh her memory or had any memory of the exam, and overruled Harbold's hearsay objection. The Commonwealth asked Nurse Ressler if she would be able to testify as to the contents of her report, and she asked if she could refer to it if she "should have any question." *Id.* at 121. The court then told the prosecutor he could give Nurse Ressler her report during her testimony "so she can refresh her recollection if necessary." *Id.*

The Commonwealth then questioned Nurse Ressler regarding the contents of the report. Nurse Ressler recounted her observations during the examination, at some points using the report as reference, and at others, reading her notations in the report. *See id.* at 122-24, 126-27. She then read the portion of the report recording the victim's description of the incident, which tracked the victim's testimony. *Id.* at 124-25. Nurse Ressler also testified that the victim had bruises on her arms, wrists, thighs, and face, petechia on her upper chest, and an abrasion and lacerations on her face and neck. *Id.* at 122-24. Nurse Ressler observed abrasions around the victim's vagina, where the victim reported soreness. *Id.* at 127. Nurse Ressler

concluded the victim's injuries were consistent with the victim's description of the incident. *Id.* at 124-25. The court later admitted the report into evidence over Harbold's hearsay objection. *Id.* at 173. Harbold did not at any time object that the court had not properly followed the procedure for refreshing a witness's recollection.

The Commonwealth also presented the testimony of the responding police officer, who testified, *inter alia*, regarding the bruises and marks he observed on the victim, and the report he created after responding to the incident. The officer acknowledged that the victim "did not at that point report to [him] anything about a window or attempting to climb out a window." *Id.* at 187. In addition, the Commonwealth presented the testimony of the director of a domestic violence assault shelter—an expert in behaviors of victims of domestic and sexual assault—and played audio recordings of telephone calls between Harbold and his father, and Harbold and another woman. Finally, Harbold testified in his own defense.

After the close of evidence, Harbold requested the court instruct the jury that the *mens rea* requirement for a conviction of rape by forcible compulsion was "at least recklessness." *Id.* at 249. The court denied the request. *Id.* at 255.

The jury convicted Harbold of the above charges. The trial court sentenced Harbold to an aggregate of six to 12 years' incarceration followed by one year of probation. Harbold appealed, raising the following issues:

I.   Was there insufficient evidence to convict Mr. Harbold of count 1, Rape by Forcible Compulsion, as there was insufficient evidence to prove beyond a reasonable doubt that the sexual intercourse between Mr. Harbold and Autumn Oberlander was accomplished by physical force or threat of physical force?

II.  Was there insufficient evidence to convict Mr. Harbold of count 2, strangulation, as there was insufficient evidence to prove beyond a reasonable doubt that Ms. Oberlander's breathing or circulation was impeded by Mr. Harbold?

III. Was there insufficient evidence to convict Mr. Harbold of count 3, Unlawful Restraint, as there was insufficient evidence to prove beyond a reasonable doubt that Ms. Oberlander was unlawfully restrained in circumstances that exposed her to a risk of serious bodily injury?

IV.  Was there insufficient evidence to convict Mr. Harbold of count 3, unlawful restraint, as there was insufficient evidence to prove beyond a reasonable doubt that Mr. Harbold knowingly exposed Ms. Oberlander to a risk of serious bodily injury?

V.   Did the trial court err in prohibiting defense counsel from refreshing Ms. Oberlander's recollection with Officer Bowen's police report as Pa.R.E. 612 does not require the writing being used to have been authored by the witness testifying?

VI.  Did the trial court err in overruling defense counsel's objection to Theresa Ressler testifying from her report?

VII. Did the trial court err in overruling defense counsel's objection to Theresa Ressler testifying from her report as that report contained inadmissible hearsay?

VIII. Did the trial court err in denying defense counsel's request for a mistrial after Ms. Oberlander improperly testified that Mr. Harbold had been physically violent to her prior to April 25th, contrary to an agreement that the witness would restrict her testimony to the events of April 25th?

IX.  Did the trial court err in denying defense counsel's request for a jury instruction advising that the mens rea for the element of forcible compulsion at count 1 is at least recklessness?

Harbold's Br. at 7-8 (suggested answers and some capitalization omitted).

### 1. Sufficiency of the Evidence

In his first four issues, Harbold contends the evidence was insufficient to support his convictions. Evidence is sufficient when it "enable[s] the trier of fact to find every element of the crime has been established beyond a reasonable doubt." *Commonwealth v. Clemens*, 242 A.3d 659, 665 (Pa.Super. 2020) (citation omitted). When we consider a sufficiency challenge, we view the trial evidence "and all reasonable inferences drawn" from it in the "light most favorable to the Commonwealth as verdict winner." *Id.* at 664 (citation omitted). The Commonwealth may prove its case through wholly circumstantial evidence, and the trier of fact is free to believe all, part, or none of the evidence. *Id.* at 665.

Harbold first argues the evidence was insufficient to support his conviction for Rape by Forcible Compulsion. According to Harbold, the evidence did not prove beyond a reasonable doubt that he used force or the threat of force against the victim. Harbold argues the victim was lying on the bed while he removed her pants and underwear, that she did not indicate that she did not want to have intercourse, and that she was an active participant during the intercourse. *See* Harbold's Br. at 18.

The jury convicted Harbold of "engag[ing] in sexual intercourse with [the victim] . . . [b]y forcible compulsion." 18 Pa.C.S.A. § 3121(a)(1). The crimes code defines "forcible compulsion" in relevant part as "[c]ompulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied." *Id.* at § 3101. A "mere showing of a lack of consent" is

not sufficient, standing alone, to prove Rape by Forcible Compulsion. ***Commonwealth v. Eckrote***, 12 A.3d 383, 387 (Pa.Super. 2010). However, the Commonwealth does not have to prove that the victim resisted. 18 Pa.C.S.A. § 3107.

As noted by the trial court, the Commonwealth presented evidence "that the victim was held down by [Harbold] during the intercourse, that [Harbold] choked and threatened to kill the victim immediately prior to the intercourse, and that the victim did not consent to the intercourse." Trial Ct. Op. at 3-4 There was evidence that the victim sustained physical injury to her arms, neck, face, and vagina during the incident. Harbold himself admitted that shortly before the intercourse, he pinned the victim down, put his hands around her neck and squeezed, and threatened her. ***See*** N.T. at 229. This was enough to prove that Harbold used "physical, intellectual, moral, emotional or psychological force, either express or implied." 18 Pa.C.S.A. § 3101. Harbold's first argument fails.

Harbold next argues there was insufficient evidence to support his conviction for Strangulation. He claims the evidence failed to prove beyond a reasonable doubt that he impaired the victim's breathing or circulation. Harbold's Br. at 20.

Pursuant to the subsection under which Harbold was charged, the crime of Strangulation occurs if a person "knowingly or intentionally impedes the breathing or circulation of the blood of another person by . . . blocking the

nose and mouth of the [other] person." 18 Pa.C.S.A. § 2718(a)(2). The crime does not require proof of physical injury. *Id.* at § 2718(b).

Here, as the trial court observed, the victim testified that Harbold "choked her such that she 'couldn't breathe.'" *See* Trial Ct. Op. at 4 (quoting N.T. at 107-08 and citing N.T. at 69). Harbold admitted in his testimony that he squeezed the victim's neck with both hands and put his hand over her mouth such that she could not speak. *Id.* at 4 n.11 (citing N.T. at 229-30). The evidence was sufficient for the jury to convict Harbold of Strangulation.

Harbold next contends that his conviction for Unlawful Restraint is infirm because the evidence was insufficient to prove that: (1) the circumstances of the restraint exposed the victim to a risk of serious bodily injury; and (2) he restrained her knowing of such a risk. Harbold argues that there was no evidence that any of his actions risked serious bodily injury to the victim, and that he could not have known that his refusal to leave the residence would result in the victim attempting to exit through a second-story window. *See* Harbold's Br. at 21-22.

The jury convicted Harbold of unlawful restraint under 18 Pa.C.S.A. § 2902(a)(1). That subsection provides that a person commits Unlawful Restraint when the person "knowingly . . . restrains another unlawfully in circumstances exposing [the other person] to risk of serious bodily injury[.]" 18 Pa.C.S.A. § 2902(a)(1). "Serious bodily injury" is "[b]odily injury which creates a substantial risk of death or which causes serious, permanent

disfigurement, or protracted loss or impairment of the function of any bodily member or organ." ***Id.*** at § 2301.

The trial court rejected this claim because the "manhandling" and strangulation that accompanied the rape entailed a risk of serious bodily injury, "and it is self-evident that [Harbold] knowingly pursued that course of conduct." Trial Ct. Op. at 4-5. We agree and add that Harbold also threatened to kill the victim. ***See Commonwealth v. McBall***, 463 A.2d 472, 474 (Pa.Super. 1983) (finding evidence that defendant repeatedly threatened to kill the victim; pulled, grabbed by the neck, and held down the victim; pushed and shoved the victim; and disrobed and raped her, supported finding that defendant exposed victim to serious bodily injury, so as to support conviction for Unlawful Restraint). The evidence was sufficient.

### 2. Evidentiary Rulings

Harbold's next three issues challenge the trial court's rulings regarding the admission of evidence. We review the trial court's evidentiary rulings for an abuse of discretion. ***Commonwealth v. Lynch***, 242 A.3d 339, 350 (Pa.Super. 2020), *appeal denied*, No. 675 MAL 2020, 2021 WL 1540578 (Pa. Apr. 20, 2021). An abuse of discretion is an "overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality[.]" ***Id.*** (citation omitted).

We also do not grant relief where we are convinced beyond a reasonable doubt that an error was harmless. ***Commonwealth v. Hamlett***, 234 A.3d 486, 492 (Pa. 2020); ***Commonwealth v. Story***, 383 A.2d 155 (Pa. 1978).

- 11 -

An error is harmless if its prejudicial effect is insignificant in comparison to the overwhelming, uncontradicted, properly admitted evidence of guilt; any prejudice was *de minimis*; or where the erroneously admitted evidence was merely cumulative of other, untainted evidence. ***Commonwealth v. Koch***, 39 A.3d 996, 1007 (Pa.Super. 2011). However, if there is a reasonable possibility that erroneously admitted evidence could have contributed to the verdict, the error is not harmless. ***Id.*** at 1006.

Harbold presents two arguments that relate to the refreshing of a testifying witness's memory. He first argues that the court erred in sustaining the Commonwealth's objection to his attempted refreshment of the victim's memory on cross-examination. The disputed ruling occurred when Harbold asked the victim if she would agree that she did not tell an officer shortly after the incident that she attempted to escape out the window, and she replied that she did not remember. Harbold then asked her if the officer's report would refresh her memory. Before she could answer, the prosecutor objected that the report would not refresh her recollection because it only showed what the officer recorded. The court sustained the objection.

Harbold argues the court should have allowed the testimony under Pa.R.E. 612(a). He claims that if the report had not refreshed the victim's recollection, she could have testified as such, but that a witness may refresh her recollection using someone else's writing. ***See*** Harbold's Br. at 24.

A witness's memory may be refreshed with a writing or other item. Pa.R.E. 612(a). If the witness's memory on the stand is inadequate, the

witness may be shown an item in an effort to jog the witness's memory. The witness then must put the item aside, and if the witness's memory is refreshed, the witness may then testify from memory. *See Commonwealth v. Payne*, 317 A.2d 208, 210 (Pa. 1974); Leonard Packel and Anne Bowen Poulin, 1 West's Pa. Prac., Evidence § 612-1 (4th ed.).

Even assuming the trial court erred in not allowing Harbold to refresh the victim's recollection with the report, *but see Gallizi v. Scavo*, 179 A.2d 638, 646 (Pa. 1962) (holding witness properly refreshed recollection with document prepared by counsel, where "the facts contained therein were sworn to" by the witness himself),[2] any such error was harmless. The court allowed Harbold to ask the victim if she would be surprised if the report did not say anything about her attempted escape through the window. Also, the officer who prepared the report testified that the victim did not tell him on the day of the incident about any such attempt. *See* N.T. at 97, 187. The information that Harbold wanted to obtain after refreshing the victim's memory was thus otherwise before the jury.

Second, Harbold argues the court erred in overruling his objection to Nurse Ressler's reading to the jury the contents of her report verbatim. He argues that after her recollection was refreshed, she had to testify from her refreshed memory and not the writing itself, and that the writing could not

---

[2] *See also Commonwealth v. Sal-Mar Amusements, Inc.*, 630 A.2d 1269, 1274 (Pa.Super. 1993) (holding witness's memory properly refreshed with his notes that a secretary had typed).

thereafter be introduced into evidence. Harbold's Br. at 25. Harbold also argues Nurse Ressler's testimony relaying what the victim told her was inadmissible hearsay. *See id.* at 26 (citing Pa.R.E. 801, 802). In particular, he argues the victim's statement, "I couldn't breathe," as reported by Nurse Ressler, was not admissible as a prior consistent statement, as the victim had not testified that she had been unable to breathe. *Id.* at 27.

Harbold did not object at trial that Nurse Ressler was testifying from her report, instead of from memory, after refreshing her memory with the report. That claim is therefore waived on appeal. *See* Pa.R.A.P. 302. Although he did object at trial that the report itself was hearsay,[3] he did not raise the hearsay-within-hearsay argument he now makes, abandoning his contention that the report itself was hearsay. He in fact explicitly declined to object to the victim's statements. *See* N.T. at 120 (defense counsel stating, "I'm not objecting at this point to the past consistent statements coming in"). He thus waived this issue, too.

Moreover, we would reject the arguments he now makes even if he had not waived them. Any impropriety in Nurse Ressler's use of the report after the court stated she could use it to refresh her memory was harmless, as the report was properly admitted into evidence over Harbold's objection that it

---

[3] Defense counsel said, "My objection is that it's hearsay. She's not qualified as an expert. So I think the report is just hearsay recitation of her conclusions that she's planning to testify to today." N.T. at 119. He later reiterated, "I guess my concern here, Your Honor, is that the report itself is hearsay." *Id.* at 120.

was hearsay. Under Pa.R.E. 803.1(3), a witness's recorded recollection is admissible if the witness testifies and is subject to cross-examination. The record must be (1) "on a matter the declarant-witness once knew about but now cannot recall well enough to testify fully and accurately"; (2) "made or adopted by the declarant-witness when the matter was fresh in his or her memory"; and (3) an accurate reflection the knowledge of the declarant-witness, at the time the record was made, as testified to by the declarant-witness. Pa.R.E. 803.1(3); **see also Commonwealth v. Cargo**, 444 A.2d 639, 641 (Pa. 1982). The witness need not lack complete recall regarding the subject, but only be unable to testify "fully and accurately" on the issue. **Commonwealth v. Shaw**, 431 A.2d 897, 899-900 (Pa. 1981). If these conditions are satisfied, the record may be read into evidence. Pa.R.E. 803.1(3).

As the court explained in its opinion, Nurse Ressler testified she authored the report contemporaneously with her examination of the victim, that it was accurate, and that she could not recall the entirety of its contents. **See** Trial Ct. Op. at 10 (citing N.T. at 118, 121). The contents of the report were therefore admissible under Pa.R.E. 803.1(3), and the nurse permissibly referred to it and read from it during her testimony.

Regarding the victim's statements recorded in the report—that is, the statements the victim made to Nurse Ressler—they were admissible under Pa.R.E. 613(c)(1). That Rule provides,

- 15 -

Evidence of a witness's prior consistent statement is admissible to rehabilitate the witness's credibility if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of . . . fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose[.]

Pa.R.E.613(c)(1).

To be admissible as a prior consistent statement to rehabilitate a witness's testimony, pursuant to Rule 613(c)(1), the claim that the witness fabricated her testimony or has a faulty memory does not have to be explicit. Rather, it may be implied, inferred, or insinuated. **Commonwealth v. Bond**, 190 A.3d 664, 668 (Pa.Super. 2018). Here, as the trial court found, the victim's statements to Nurse Ressler "tended to rebut [Harbold]'s well-developed theory that the victim's direct testimony was the product of a faulty memory[.]" Trial Ct. Op. at 10.

Harbold counters that the victim's statement to Nurse Ressler was not consistent with the victim's trial testimony, in that Nurse Ressler reported that the victim had told her that when Harbold had choked her she could not breathe. The record belies this claim, as the victim testified that she had submitted a written statement to the police stating that Harbold had covered her mouth and nose such that she could not breathe. **See** N.T. at 107-08.[4] Harbold's challenges to Nurse Ressler's testimony do not merit relief.

_____

[4] Nurse Ressler's testimony in this regard was also merely cumulative of the victim's testimony. **See** Trial Ct. Op. at 10; **Commonwealth v. Polston**, 616 A.2d 669, 677 (Pa.Super. 1992).

In his third evidentiary claim, Harbold argues the trial court erred in overruling his objection to the victim's testimony that Harbold had been physically violent towards her prior to the rape. He also challenges the denial of his request for a mistrial.

When the Commonwealth asked the victim if she and Harbold had been arguing in the days leading up to the incident, and what they had been arguing about, the victim responded that Harbold had gotten jealous and had been "physically violent." N.T. at 65. Harbold argues this testimony constituted misconduct, as the witness had been specifically directed not to testify regarding any acts of violence prior to the day of the rape. He claims the testimony deprived him of a fair and impartial trial, by inviting the jurors to judge him for alleged conduct for which he was not on trial. Harbold's Br. at 27-29.

We review a trial court's decision to deny a motion for a mistrial for an abuse of discretion. ***Commonwealth v. Rega***, 933 A.2d 997, 1016 (Pa. 2007). A mistrial should only be granted "where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." ***Id.*** (quoting ***Commonwealth v. Simpson***, 754 A.2d 1264, 1272 (Pa. 2000)).

The trial court found that although the testimony violated its ruling precluding testimony of Harbold's prior acts of violence, there was not sufficient prejudice to warrant a mistrial. The trial court explained that "the

statement was made in passing, as a single phrase within a single sentence, in the midst of a lengthy direct examination. It did not describe the conduct in any detail, inflammatory or otherwise. Further, it was not uttered with any notable emphasis or pathos." Trial Ct. Op. at 12. The court also noted that Harbold had admitted in his testimony to engaging in violent behavior on the day of the rape, characterizing it as "'make-up' sex," and as a result, the "fleeting allusion to violence at the outset of a trial that was heavily laden with the topic does not constitute prejudice." *Id.* at 12-13. According to the trial court, "If this testimony tended to paint [Harbold] as a violent person, it was a mere brush stroke in a telling self-portrait that [Harbold] composed on the stand." *Id.* at 14.

We agree that the victim's short reference to Harbold's "physical violence" did not cause sufficient prejudice to warrant a mistrial, given the extent of the testimony detailing the events on the day of the rape. *Koch*, 39 A.3d at 1006. The court did not abuse its discretion in denying the motion.

### 3. Jury Instruction

In his final issue, Harbold argues the trial court erred in denying his request that the court instruct the jury that the *mens rea* of Rape by Forcible Compulsion was recklessness. Harbold argues that by not giving a *mens rea* instruction, "the trial court enabled the jury to convict Mr. Harbold on a strict liability finding with respect to consent[.]" Harbold's Br. at 30. He argues that because the statute defining rape, 18 Pa.C.S.A. § 3121(a)(1), is silent on *mens rea*, it must require a finding of at least recklessness, pursuant to 18

Pa.C.S.A. § 302(c). Harbold cites in support ***Commonwealth Carter***, 418 A.2d 537 (Pa.Super. 1980).

"We review jury instructions for a clear abuse of discretion or an error of law." ***Commonwealth v. Hall***, 199 A.3d 954, 963 (Pa.Super. 2018). We consider the charge as a whole to determine whether it "is inadequate, not clear, or has a tendency to mislead or confuse a material issue." ***Id.*** A trial court need not give an instruction as to a particular element, offense, or defense where the evidence would not substantiate a jury finding on that point. ***Id.***

Harbold's argument is meritless. Applicable precedents have uniformly not included recklessness as an element of Rape by Forcible Compulsion. Rather, they have required proof of "sexual intercourse" by "forcible compulsion." ***See Commonwealth v. Gonzalez***, 109 A.3d 711, 720 (Pa.Super. 2015); ***see also Commonwealth v. Keaton***, 729 A.2d 529, 541 (Pa. 1999) (stating those elements, plus additional element under prior law that complainant not be defendant's wife). The trial court faithfully followed these precedents in not giving the instruction.

Furthermore, the point of Harbold's request for a recklessness instruction was to enable him to mount a defense that he was reasonably mistaken about the victim's consent. Harbold explained below that he wanted the recklessness instruction so that the jury could consider if he had a "reasonable belief that he was having consensual sex." N.T. at 249-50. But whether Harbold recklessly believed the victim consented, or was just

- 19 -

negligent, was irrelevant, as a mistake of fact about the victim's consent is no defense to rape. Longstanding precedent holds that a defendant's mistaken belief as to the victim's consent is not a defense in a rape case, and the court should not give any such instruction. *See Commonwealth v. Fischer*, 721 A.2d 1111, 1118 (Pa.Super. 1998) (citing *Commonwealth v. Williams*, 439 A.2d 765, 769 (Pa.Super. 1982)).[5] Harbold was not entitled to any such instruction.

Finally, his reliance on *Carter* is misplaced. In *Carter*, the defendant was charged with sexual intercourse with a person "who is so mentally deranged or deficient that such person is incapable of consent." *Carter*, 418 A.2d at 539. We held the Commonwealth had to prove that the defendant was at least reckless as to the victim's mental capacity. *Id.* at 540. Harbold was convicted under a different provision, which requires a showing of "sexual intercourse" by "forcible compulsion." *See* 18 Pa.C.S.A. § 3121(a)(1). The court did not err or abuse its discretion in denying the request for the jury charge.

Judgment of sentence affirmed.

---

[5] *See also Commonwealth v. Farmer*, 758 A.2d 173, 178 (Pa.Super. 2000) (finding counsel's failure to argue against *Williams*, in light of *Fischer*, could not support an ineffectiveness claim).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>07/12/2021</u>