J-S09022-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEVIN MCCALL | : | |
| | : | |
| Appellant | : | No. 563 WDA 2022 |

Appeal from the Judgment of Sentence Entered January 20, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0002835-2020

BEFORE: BENDER, P.J.E., BOWES, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.: **FILED: MAY 9, 2023**

Devin McCall appeals from the judgment of sentence of an aggregate term of six and one-half to thirteen years of incarceration imposed upon his convictions for multiple possessory offenses involving controlled substances and firearms. We affirm.

The following is a factual summary gleaned from the trial court's recitation of the evidence underlying Appellant's convictions. In early January 2020, Detective Michael Slatcoff of the City of Pittsburgh Police's Narcotics and Vice Unit conducted an investigation of illegal drug sales out of a residence at 709 Industry Street, Apartment 1 after receiving a tip from a confidential source ("CS"). In surveilling the apartment, police observed multiple individuals enter the residence, some without knocking first, and exhibit signs of drug use. The police also orchestrated a controlled buy of narcotics through

the CS, who was searched beforehand, given serialized money to purchase narcotics, and searched afterwards to recover the acquired contraband. Through their investigation, the police further learned that the leaseholder of the apartment was Michael Shearn. The suspected drug dealer, whose phone number police had, was "a black male with long dread locks and a slightly heavy-set build" who "went by the nickname 'D,' 'Dirty,' and/or 'Dirt.'" Trial Court Opinion, 8/9/22, at 4 (cleaned up). The police utilized this information to obtain a search warrant for the apartment, Mr. Shearn, and "D."

A SWAT team that included narcotics detective Matthew Costabile executed the warrant on January 9, 2020. According to Detective Costabile,

> entry was made directly into the living room, where a white male was located on a couch. At this same time a heavy-set black male with dreadlocks ran from the living room towards a hallway. The black male, later identified as Appellant, was wearing a white t-shirt and black pants. He was using both of his hands to hold his front waistband as he ran towards the back of the residence. Detective Costabile gave several commands for Appellant to show his hands and come to the front of the residence. Appellant did not comply, whereafter, Detective Costabile and other members of SWAT entered the hallway. Several more commands were given, ordering Appellant to show his hands and come out. Thereafter, Appellant's head peered around a kitchen wall and only his left hand was visible. Again commands were given instructing Appellant to display both of his hands. He finally complied and was detained with handcuffs. No other persons were located in the kitchen. After removing Appellant, Detective Costabile observed a digital scale on the counter with white residue, and a silver revolver on the floor located approximately three feet from where Appellant had been standing.

*Id*. at 7 (footnotes omitted). A search of Appellant's person yielded no contraband, but did produce an identification card listing an address different

from the searched apartment and just under $600 in cash, none of which was from the controlled buy. "Prior to transporting Appellant from the scene, police allowed him to get dressed. At this time Appellant requested three belongings from the kitchen: a jacket hanging on a chair, a pair of boots on the floor below the jacket and the black LG phone found on top of the stove."

*Id*. at 6.

> Detectives then began a search of the apartment. Inside the kitchen . . . police observed various narcotics, drug paraphernalia and personal items. From a kitchen drawer, police recovered sandwich bags and diaper baggies,[1] and underneath the baggies they located a digital scale, a small bag of crack cocaine, and four stamp bags of heroin. On the kitchen counter police found a second digital scale, and a sandwich baggie containing five individual bags with crack cocaine. Inside an orange bag located in front of the kitchen cabinet, police recovered additional narcotics, heroin and fentanyl. Additionally, a Smith and Wesson revolver was recovered from the floor in a corner of the kitchen. . . . Two additional cell phones were retrieved from the floor of the kitchen. A test call made by Detective Slatcoff to the phone number used by the CS to arrange the controlled buy connected to one of the cell phones on the floor. A cell phone number subsequently provided by Appellant did not connect to the black cell phone recovered from the top of the stove.

---

[1] Detective Slatcoff explained:

> So diapers are another very common item you will find with distributors. You have a sandwich bag, the narcotics a variety of which are packaged into corners. The distributor will either cut off that corner on both sides or rip it off.
>
> Sometimes you will see it twisted off and knotted, and then the remnants looks like a diaper. That's why we call it that. It's very specific evidence for us that narcotics are being packaged.

N.T. Trial, 9/28-29/21, at 107.

*Id*. at 5-6 (footnotes omitted).

Appellant was charged with three counts each of possession of a controlled substance and possession with intent to deliver ("PWID"), as well as one count each of conspiracy (PWID), possession of drug paraphernalia, person not to possess firearms, and possession of an instrument of crime. He filed an omnibus pretrial motion in which he, *inter alia*, sought to suppress the evidence obtained from execution of the search warrant because the lack of detail about the reliability of the CS rendered the warrant unsupported by probable cause. *See* Omnibus Pretrial Motion, 7/9/21, at 5-6. The trial court denied the motion and proceeded to a bench trial.

The Commonwealth presented evidence of the above facts through Detectives Slatcoff and Costabile, as well as the facts that the suspected narcotics tested positive for heroin, fentanyl, and cocaine; the recovered firearm was operable; and Appellant had prior convictions that rendered him ineligible to possess a firearm. *Id*. at 6. Detective Slatcoff further testified as an expert witness to opine that, based upon the packaging of the narcotics and the presence of digital scales and other paraphernalia, multiple cell phones, and cash, the evidence suggested street-level drug sales and distribution rather than personal use.

Appellant testified in his defense as follows:

Appellant testified that for the three days leading up to January 9, 2020, he had been visiting his uncle, who lives in the second-floor apartment located at 709 Industry Street, while Appellant's car was being fixed. He testified that although his

- 4 -

uncle allowed him to visit, he does not allow anyone in the apartment when he is not home. Consequently, he testified that his uncle arranged for Appellant to stay at a neighboring apartment during his work hours, which ran from 7:00 a.m. until 8:00 or 9:00 p.m. This neighboring apartment was the first-floor apartment belonging to Mr. Shearn. Appellant stated he did not know Mr. Shearn prior to the days leading up to the search.

On the day the search warrant was executed Appellant testified that he was in the bathroom of Mr. Shearn's apartment having sex with his girlfriend Christina Cobaugh. He stated that after hearing loud bangs, he quickly pulled up his pants and went into the living room. Police then made entry with guns drawn and Appellant ran towards the kitchen. He explained that he ran out of fear because he [had] been the victim of a prior shooting. Appellant denied using his hands to hold up his pants when he fled the living room, because he was wearing a belt. He explained that he was trying to comply with police commands to show his hands, but because of his body angle he was only able to show his right hand at first. He further explained he had a cell phone on his person and had to put it down in order to show both of his hands. He later testified that the phone was registered to either his uncle or his wife, and that both Mr. Shearn and Ms. Cobaugh used this phone. In terms of his personal belongings, Appellant described that the $600 retrieved from his person was money to pay for his car repairs. His only other belongings were a black jacket and a pair of boots that were outside the bathroom because he had removed them in order to have sex with Ms. Cobaugh. He speculated that both the jacket and boots must have been kicked around while SWAT was inside the apartment. Appellant denied going by the nicknames "D" or "Dirt," but testified that his uncle, whose name he could not spell, is known by those names. He further denied that any of the drugs in the kitchen belonged to him, but offered that both Ms. Cobaugh and Mr. Shearn are drug users.

*Id*. at 9-10 (cleaned up).

Upon this evidence, the trial court acquitted Appellant of conspiracy but found him guilty of the remaining charges. Following a presentence investigation ("PSI"), the court sentenced Appellant as indicated above.

Appellant filed a timely post-sentence motion (1) challenging the sufficiency of the evidence to support the convictions; (2) claiming that the verdict was against the weight of the evidence; and (3) asking the trial court to reconsider its imposition of a manifestly excessive aggregate sentence by ordering multiple consecutive sentences based only upon the serious nature of the crime and without adequately considering Appellant's rehabilitative needs. *See* Post-Sentence Motion, 1/28/22, at ¶¶ 4-6.

The trial court denied Appellant's post-sentence motion in all respects, and Appellant filed a timely notice of appeal. Thereafter, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant complied. The trial court thereafter authored an opinion pursuant to Pa.R.A.P. 1925(a). Appellant presents the following questions for our consideration:

1. Whether the evidence presented at trial was insufficient as a matter of law to sustain a conviction for any of the charged offenses?

2. Whether the verdict was against the weight of the evidence to convict [Appellant] of any of the charged offenses?

3. Whether the trial court erred when it denied [Appellant]'s pretrial motion to suppress evidence when the Commonwealth failed to demonstrate that the search warrant contained sufficient probable cause?

4. Whether the Trial Court abused its discretion in sentencing [Appellant]?

Appellant's brief at 3 (cleaned up).

We begin with Appellant's sufficiency challenge, mindful of our standard of review:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for a fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence received must be considered. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Haahs*, 289 A.3d 100, 104 n.2 (Pa.Super. 2022) (cleaned up).

Each of Appellant's convictions required proof that he possessed the contraband in question. *See* 18 Pa.C.S. § 6105; 35 Pa.C.S. § 780-113(a)(16), (30), (32). That is the only element of any of the crimes that Appellant challenges in this appeal. *See* Appellant's brief at 15-18. Since the Commonwealth did not prove that Appellant had been in actual possession of any of the prohibited items, to be sound, his convictions must rest on proof that he constructively possessed the firearm, drugs, and paraphernalia. *See*, *e.g.*, *Commonwealth v. Dix*, 207 A.3d 383, 390 (Pa.Super. 2019).

This Court has explained constructive possession as follows:

Where possession is an element of the offense, the concept of constructive possession is a legal fiction used to prove the element although the individual was not in physical possession of the prohibited item. The evidence must show a nexus between the accused and the item sufficient to infer that the accused had the power and intent to exercise dominion and control over it. Dominion and control means the defendant had the ability to reduce the item to actual possession immediately, or was otherwise able to govern its use or disposition as if in physical possession. Mere presence or proximity to the contraband is not enough. Constructive possession can be established by inferences derived from the totality of the circumstances.

*Commonwealth v. Bowens*, 265 A.3d 730, 741 (Pa.Super. 2021) (*en banc*) (cleaned up). "For the Commonwealth to prove constructive possession where more than one person has access to the contraband, the Commonwealth must introduce evidence demonstrating either the defendant's participation in the drug-related activity or evidence connecting the defendant to the specific room or areas where the drugs were kept." *Commonwealth v. Hall*, 199 A.3d 954, 961 (Pa.Super. 2018) (cleaned up). While mere presence in a place where contraband is found is not sufficient, "presence at a scene where drugs are being processed and packaged is a material and probative factor which the [fact-finder] may consider." *Id*. (cleaned up).

Appellant argues that the trial evidence merely showed that he was present along with other people in the apartment where the contraband was recovered, and no evidence "rule[d] out the possibility that another individual possessed the contraband." *See* Appellant's brief at 16. He maintains that "virtually none of the contraband was in plain view," and there was no

indication that Appellant, who did not reside in the apartment, was even aware of the drugs that were found inside cabinets and drawers.[2]  *Id*. at 17. Appellant posits that it makes no sense for him to have run into the kitchen when police arrived if he had known about the drugs and gun, because "if an individual is aware of the presence of illegal contraband and knows they are guilty of possessing such items, they would not run to and purposely place themselves in the area where all the contraband was found."  *Id*. at 18. Moreover, Appellant asserts that, even if he had known the contraband was present, no evidence established that he had any intent to control it.  *Id*. at 17.

Here, the police executed a search warrant where a CS had purchased illegal narcotics and where Appellant, by his own testimony, had recently spent more than half of each day.  *See* N.T. Trial, 9/28-29/21, at 34, 68, 122. Appellant, who matched the description the CS gave of the drug dealer, did

---

[2] Appellant also observed that no fingerprint or DNA evidence was recovered from the contraband to connect Appellant to it.  *See* Appellant's brief at 16. That type of forensic evidence would have been circumstantial evidence that Appellant had previously been in actual possession of the items, rather than evidence that Appellant merely had the conscious ability to reduce them to actual possession.  *Compare Commonwealth v. Bowens*, 265 A.3d 730, 741 (Pa.Super. 2021) (*en banc*) ("Constructive possession requires no proof that the defendant had been in actual possession of the contraband at another time."), *with Commonwealth v. Fudge*, 213 A.3d 321, 329 (Pa.Super. 2019) ("Whether [the defendant's] fingerprints were present on the contraband is solely relevant to whether [he] was in actual, physical possession of the contraband.").  The distinction between evidence of constructive possession and evidence of past actual possession is often overlooked in the litigation and decision of cases such as this one.

not comply with directions to put his hands in the air, but rather ran away from the police grasping at his waistband. *Id*. at 68-71. A firearm was recovered from the kitchen floor, a few feet from where Appellant ultimately surrendered, one hand at a time, with an amount of cash on his person consistent with street-level drug distribution. *Id*. at 68-71, 108. Evidence that drugs were being packaged and processed was found out in the open in the kitchen, along with Appellant's only personal effects in the apartment. *Id*. at 40-44. Further, Detective Slatcoff testified that "the discovery of a firearm and multiple cell phones, one of which belonged to Appellant and the other involved in the controlled buy, was significant," along with the firearm "that drug dealers typically use . . . to protect their drug operation." Trial Court Opinion, 8/9/22, at 12-13 (citing N.T. Trial, 9/28-29/21, at 106-08).

From this, the fact-finder was properly able to find that Appellant was not an innocent bystander, but rather was an active participant in the drug-selling operation who exercised conscious dominion over the contraband associated with it. *Accord Commonwealth v. Hall*, 199 A.3d 954, 961 (Pa.Super. 2018) (holding evidence was sufficient to establish the defendant's constructive possession of contraband found, some in plain sight, in an apartment where others had been present). Appellant's fleeing from police exhibited a consciousness of guilt which further supported an inference of knowledge and constructive possession. *See*, *e.g.*, *Commonwealth v. Cruz*,

21 A.3d 1247, 1253 (Pa.Super. 2011). Therefore, we conclude that Appellant's sufficiency challenge merits no relief.

Appellant next contends that the verdicts are against the weight of the evidence. The following law applies to our consideration of that claim:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Arias*, 286 A.3d 341, 352 (Pa.Super. 2022) (cleaned up). Accordingly, our task is to determine whether the trial court, in ruling on Appellant's weight challenge, "abused its discretion by reaching a manifestly unreasonable judgment, misapplying the law, or basing its decision on partiality, prejudice, bias, or ill-will."[3] *Commonwealth v. Clay*, 64 A.3d 1049, 1056 (Pa. 2013) (cleaned up).

---

[3] "We recognize the inherent incongruity in asking a trial judge to conclude that his non-jury decision shocked his own conscience. Nonetheless, this Court applies the same standard of review to weight claims regardless of whether the trial judge presided over a jury or non-jury trial." *Commonwealth v. Peters*, 276 A.3d 226 (Pa.Super. 2022) (non-precedential decision at 4 n.2)

- 11 -

Appellant argues that the trial court abused its discretion in not granting a new trial because "Commonwealth witnesses presented contradictory and incredible evidence to which the trial court assigned too much weight, while not providing enough weight to [Appellant's] own, credible testimony." Appellant's brief at 19-20 (cleaned up). For example, Appellant points to allegedly inconsistent testimony about whether he had been "wearing black pants or black sweatpants," notes that no photographs were offered showing his clothing in the kitchen where the detectives said it was, and that "unconvincing evidence was presented to indicate that a controlled buy even occurred" before the warrant was issued. *Id*. at 22, 24. Appellant maintains that only his testimony, namely that his uncle made arrangements for Appellant to spend thirteen to fourteen hours each day with a neighbor who did not know Appellant, that the cash recovered from his person had been the paycheck of his drug-addict girlfriend with whom he had been having sex in said stranger-neighbor's bathroom when the warrant was served, and that he inadvertently implicated himself by running away from the officers and into a contraband-infested room because it triggered fears from a previous home invasion of which Appellant was a victim, better matched the physical evidence and therefore should have been believed instead. *Id*. at 20-21.

The trial court explained that it rejected Appellant's testimony as incredible "because it defies common sense and every day common experiences." Trial Court Opinion, 8/9/22, at 15. Further, the court opined

that it, "as fact finder, was presented with testimony from three witnesses and over twenty exhibits. There is nothing in the record to reflect that the court did not properly weigh this evidence, as further demonstrated by the court finding Appellant not guilty of the charge of criminal conspiracy." *Id*. at 16.

We discern no abuse of discretion by the trial court. Plainly, Appellant wishes this Court to make our own credibility determinations from a cold record and to weigh the evidence more favorably to him than the trial court did. That is not our task. Our review of the certified record reveals that the trial court did not deny Appellant's weight claim by "reaching a manifestly unreasonable judgment, misapplying the law, or basing its decision on partiality, prejudice, bias, or ill-will." *Clay*, *supra* at 1056. Thus, no relief is due.

Next, Appellant challenges the denial of his pretrial suppression motion. We consider that claim mindful of the following:

> We review trial court suppression orders to determine whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record. In reviewing an appeal by the Commonwealth of a suppression order, we may consider only the evidence from the defendant's witnesses along with the Commonwealth's evidence which remains uncontroverted. Our scope of review of suppression court factual findings is limited to the suppression hearing record. We, however, are not bound by a suppression court's conclusions of law; rather, when reviewing questions of law, our standard of review is *de novo* and our scope of review is plenary.

***Commonwealth v. Young***, 287 A.3d 907, 915-16 (Pa.Super. 2022) (cleaned up).

Appellant asserts that his rights pursuant to the Fourth Amendment to the U.S. Constitution and Article I, § 8 of the Pennsylvania Constitution were violated because "the affidavit in support of the search warrant executed on 709 Industry Street was unsupported by probable cause[.]" Appellant's brief at 25. In that vein, we observe the following.

> Probable cause is determined by the totality of the circumstances. In determining whether probable cause exists to support a search warrant, the issuing authority is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit there is a fair probability that contraband or evidence of a crime will be found in a particular place. A court reviewing the underlying probable cause determination must view the information offered to establish probable cause in a common-sense, non-technical manner. Probable cause is based on a probability, not a *prima facie* case of criminal activity.

***Commonwealth v. Green***, 265 A.3d 541, 551 (Pa. 2021) (cleaned up). Our Supreme Court has made it clear that "a reviewing court is not to conduct a *de novo* review of the issuing authority's probable cause determination, but is simply to determine whether or not there is substantial evidence in the record supporting the decision to issue the warrant." ***Commonwealth v. Jones***, 988 A.2d 649, 655 (Pa. 2010) (cleaned up).

We have noted that probable cause exists based upon an informant's tip "where police **independently** corroborate the tip, **or** where the informant has provided **accurate information of criminal activity** in the past, **or** where the informant himself participated in the criminal activity." ***Commonwealth***

- 14 -

*v. Manuel*, 194 A.3d 1076, 1083 (Pa.Super. 2018) (*en banc*) (emphases in original). In other words, "[i]nformation received from an informant whose reliability is not established may be sufficient to create probable cause where there is some independent corroboration by police of the informant's information." *Id*. (cleaned up).

> When information essential to a finding of probable cause is garnered from the use of confidential informants, the issuing authority determines the reliability of the informant's information from the facts supplied by the police official. The determination of reliability does not hinge on disclosed records regarding the track record of the informant. Furthermore, the affidavit need not contain the names, dates, or other information concerning prior arrests or convictions. The affidavit must, however, at the very least, contain an averment stating the customary phrase that the informant has provided information which has in the past resulted in arrests or convictions.

*Commonwealth v. Dukeman*, 917 A.2d 338, 341–42 (Pa.Super. 2007) (cleaned up).

Appellant maintains that the affidavit of probable cause proffered to obtain the warrant in the case *sub judice* "relied upon nothing more than the bare assertion that the [CS] was reliable." *Id*. at 26. While he acknowledges that statements of a CS are sufficient if independently corroborated, Appellant insists that the surveillance conducted in this case was insufficient. *Id*. In particular, Appellant argues that the detectives did not witness Appellant sell narcotics during the controlled buy or at any other time, did not indicate that Appellant was even present at the residence during the controlled buy, or even substantiate that a controlled buy took place, given that neither the amount

nor serial numbers of the funds used was listed. *Id*. at 26-27. Finally, Appellant observes that, while the affidavit indicates that information from the CS led to four other arrests, it "does not specify whether those arrests actually led to any convictions." *Id*. at 26.

The suppression court rejected Appellant's arguments, concluding that the affidavit of probable cause indicated both that the CS had provided reliable information in the past and that the police had independently corroborated it. As to reliability based upon prior tips, the court noted that there was no authority for the proposition that prior arrests stemming from the CS's information led to convictions, "particularly when the other information provided in this matter are brought to light including the controlled buy and the detectives' observations within a 48-hour period of seeking and obtaining the warrant." N.T. Trial, 9/28-29/21, at 15-16. Even if the reliability of the CS's tip was not sufficiently established by past events, the court opined that sufficient corroboration was established by the procurement of narcotics from that apartment through the controlled buy and from the other information gleaned through the surveillance operation. *Id*. at 14-15. Therefore, the trial court held that the affidavit of probable cause established that there was a reasonable likelihood that evidence of criminal activity would be found in the location specified in the warrant. We agree.

Detective Slatcoff's affidavit of probable cause stated as follows regarding the CS's history of reliability:

Within the past week, [two detectives] and your affiant made contact with a reliable, confidential source who claimed to have knowledge of narcotics distribution occurring within the City of Pittsburgh. Your affiant has had many conversations with this individual who we will refer to as [the CS]. Based upon these conversations, your affiant has learned that he/she has been a drug abuser for many years. [The CS] is familiar with how heroin and crack cocaine are packaged, sold and ingested in the City of Pittsburgh. [The CS] has provided detectives with information and cooperation leading to search warrants and the seizure of narcotics, including as recently as 12/11/2019. The information/cooperation provided by [the CS] has led to the arrest of in excess of four individuals for felony drug offenses at both the state and federal levels. [The CS] has also used official police funds at detectives['] direction to make controlled purchases of narcotics that has led to arrests. The information provided to your affiant and assisting detectives has been corroborated and found to be credible on numerous occasions for both ongoing and closed investigations.

Affidavit of Probable Cause, 1/9/20, at 4 (cleaned up). The affidavit further detailed that it corroborated information supplied by the CS in this case, such as that a white male named Mike was the resident of the apartment, that a black male with distinctive long dreadlocks was staying there, and the quantity and nature of the foot traffic to the residence. *Id*. at 4-5.

Hence, the affidavit established that the CS had supplied reliable intelligence in the past that was verified by not only arrests, but the seizure of narcotics from the locations searched pursuant to warrants secured upon the CS's information. *See*, *e.g.*, *Commonwealth v. White*, 457 A.2d 537, 539 (Pa.Super. 1983) ("It is now axiomatic that prior arrests attributed to information supplied by the informant need not result in convictions to establish the credibility of the informant, or the reliability of his information.

- 17 -

. . . The essential fact is that the informant gave prior information implicating others in criminal activity which information proved to be correct." (cleaned up)).

When also considering the additional fact that the police conducted the controlled buy through which they observed the CS enter the residence in question and come out with narcotics, we have no hesitation in concluding that the issuing authority was presented with sufficient information to conclude that "given all the circumstances set forth in the affidavit there is a fair probability that contraband or evidence of a crime" would be found at Apartment 1 of 709 Industry Street. **See Green**, **supra** at 551 (cleaned up). **Accord Dukeman**, **supra** at 342 (holding affidavit provided adequate probable cause where informants, including one who had given information that led to past arrests and convictions, provided information about the presence and sale of drugs at a residence and police surveillance confirmed traffic consistent with drug sales).

With his last issue, Appellant challenges the discretionary aspects of his sentence. Initially, the following legal principles govern our disposition of his claim:

> An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:

> (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect [pursuant to] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Lucky*, 229 A.3d 657, 663–64 (Pa.Super. 2020) (cleaned up).

Appellant filed a timely notice of appeal, preserved his issues in a timely post-sentence motion, and included a Rule 2119(f) statement in his brief. In his statement, Appellant asserts "that the sentencing court failed to consider and reference the statutory factors in 42 Pa.C.S. § 9721(b), and instead fashioned a sentence that only reflected the seriousness of the crime, which is contrary to the fundamental norms that underlie the sentencing process."[4] Appellant's brief at 12-13 (cleaned up). We agree that Appellant has stated a substantial question for our review. *See*, *e.g.*, *Commonwealth v. Riggs*,

---

[4] That statute provides, in relevant part that, in choosing from among the available sentencing alternatives:

> the court shall follow the general principle that the sentence imposed should call for total confinement that is consistent with section 9725 (relating to total confinement) and the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The court shall also consider any guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing[.]

42 Pa.C.S. § 9721(b).

63 A.3d 780, 786 (Pa.Super. 2012) (holding substantial question was raised by claim that the court failed to consider all § 9721(b) factors and only focused on one).

Therefore, we turn to the merits of Appellant's claim, mindful of the following. "When reviewing sentencing matters, this Court must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." *Commonwealth v. Edwards*, 194 A.3d 625, 637 (Pa.Super. 2018) (cleaned up). "We cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court." *Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa.Super. 2009). Thus, we review the trial court's sentencing determination for an abuse of discretion.

> In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Antidormi*, 84 A.3d 736, 760 (Pa.Super. 2014).

Although its discretion is broad, "the trial court's discretion is not unfettered." *Commonwealth v. Coulverson*, 34 A.3d 135, 144 (Pa.Super. 2011). The sentence imposed "should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative

needs of the defendant." 42 Pa.C.S. § 9721(b). "Where the sentencing court had the benefit of a [PSI] we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Hill*, 210 A.3d 1104, 1117 (Pa.Super. 2019) (cleaned up).

Appellant maintains that the trial court "at no point took into consideration the protection of the public, the gravity of the offense in relation to the impact on the victim and the community, and the rehabilitative needs of the defendant, pursuant to 42 Pa.C.S. §9721(b)." Appellant's brief at 32. He argues that the court failed to consider Appellant's "substantial mitigating evidence presented by defense counsel about [Appellant]'s rehabilitative needs and the tremendous strides he took while incarcerated." *Id*. Instead, Appellant urges that the court's "sole focus was on the seriousness of the crime." *Id*. at 34.

The trial court addressed Appellant's claims as follows:

> At the outset, the court stated that it considered the [PSI] and read the sentencing guidelines into the record, thereby acknowledging the same.

> Additionally, it was presented to the court that Appellant has untreated mental health diagnoses, is the father of one child, and completed various programs while housed at the jail pending trial. The court acknowledged these rehabilitative needs and mitigation when it imparted:

>> And in imposing the sentence here, I have to balance his rehabilitative needs, which I think are significant, I think there is a component of this, and this is one of those unfortunate situations where I look at

- 21 -

[Appellant] and say, boy, if there had been an opportunity to intervene at an earlier point, some of this could have been avoided. He's now 31, and he's spent a substantial portion of his adult life incarcerated in some form. I'm not discounting the fact that he has rehabilitative needs, but his prior record score is significant. It's all within his time as an adult, so it's all within the last 12 or 13 years. One involves a crime of violence. One involves a felony involving drugs. These are convictions involving firearms and drugs. I do recognize that there is some mitigation in his background.

Moreover, the court could not have been clearer that it crafted a sentence in full consideration of 42 Pa.C.S. § 9721(b), when after referencing the nature of the crimes, along with Appellant's rehabilitative needs and mitigation, it stated:

So I've tried to balance all of that, but I also believe and do agree with the Commonwealth that these are separate offenses. So the Court is going to impose mitigated range sentences at Count 1 and Count 2 consecutively because I believe, while there is mitigation and the Court recognizes that there is hopefully a path for [Appellant] moving forward, these offenses are serious.

As illustrated above, this court properly and thoughtfully considered the statutory factors under § 9721. Appellant came before the court with a significant prior record score comprised of a crime of violence, robbery, and a prior conviction for possessing drugs with the intent to deliver. The available standard range sentence at Count 1 called for 6 years of incarceration, and at Count 2, 27 months of incarceration. It was in the exercise of the court's discretion that it imposed two mitigated range sentences in acknowledgment of Appellant's needs and mitigation, while running those terms consecutively to reflect the distinct and serious crimes committed by Appellant.

Trial Court Opinion, 8/9/22, at 17-19 (cleaned up).

As the above, which is supported by the certified record, clearly reflects,

the trial court committed no abuse of discretion or sentencing error. Appellant

equates the trial court's lack of recitation on the record of certain factors it considered with a failure to have considered them at all. The two are not the same. The trial court, through review of the PSI, was presumptively aware of all pertinent information, *see Hill*, *supra* at 1117, and, as the above-quoted discussion confirms, clearly considered all relevant factors. The court just failed to weigh them the way Appellant preferred. It is not the role of this Court to substitute our judgment for that of the sentencing court and reweigh sentencing factors. *See Macias*, *supra* at 778.

Since Appellant has not pointed to record evidence to show that the sentence was manifestly unreasonable or based upon "partiality, prejudice, bias or ill will," we have no cause to disturb it. *Antidormi*, *supra* at 760. Therefore, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/9/2023