OPINION BY McLAUGHLIN, J.:
*957 Gary Allen Hall appeals from the judgment of sentence entered following his convictions for possession with intent to deliver (PWID) and related crimes. He challenges the denial of his Motion to Suppress, the sufficiency and weight of the evidence, and the giving of a joint possession charge to the jury. We affirm.
After police searched two properties and seized evidence, Hall was charged with two counts of PWID (cocaine and heroin), and one count each of possession of cocaine, possession of heroin, and possession of drug paraphernalia.[1] Hall moved to suppress physical evidence, and at a hearing, the Commonwealth presented evidence of the following.
In May 2015, Agent David Sedon of the Pennsylvania Board of Probation and Parole received a tip from a former parolee that Louis Vearnon was residing with Hall at 2011 Main Street in Aliquippa. Vearnon was the subject of multiple outstanding arrest warrants. Hall rented a one-bedroom apartment at 2011 Main Street.
Agent Sedon contacted Agent Daniel Opsatnik of the Pennsylvania Attorney General's Office, and Agent Opsatnik went to the residence and observed Vearnon leave the property and reenter. Agents Opsatnik and Sedon received backup from Aliquippa police officers and Probation and Parole agents. The team formed a perimeter around the building, and police knocked on the door. They could hear voices and the sounds of people moving around inside. No one answered the door until five to six minutes later, when Vearnon and four other people, one of whom was Hall, appeared in the doorway. Law enforcement escorted them onto the front lawn and arrested Vearnon.
While outside the apartment, Police Captain Ryan Pudik saw a box of ammunition on a coffee table inside the apartment. Captain Pudik identified the ammunition as 5.7 caliber, which he knows to be "armor defeating." N.T. Suppression, 2/7/17, at 19. He and other officers entered the building and conducted a sweep of the home to make sure that there was nobody hidden inside. Id. at 20; see also 13-14. The sweep "took approximately 30 to 40 seconds" and "began immediately after the occupants exited the apartment." Suppression Court Opinion and Order, filed March 9, 2017, at 3. The officers did not look in any small containers. N.T. Suppression, 2/7/17, at 21-22. During the sweep, Captain Pudik observed in plain sight in the living room small glassine packets, or "stamp bags," and a cutting agent, benzocaine hydrochloride. Suppression Ct. Op. at 3. He also saw what he believed to be a bundle of stamp bags in the bedroom.
Based on the items observed in plain sight during the sweep, the police obtained a search warrant for the apartment. They then searched the home and recovered roughly 50 grams of cocaine and more than 20 bricks of heroin. They found the majority of the drugs in the living room, inside the coffee table and behind a large couch. The police also recovered the items that Captain Pudik had seen during the sweep - the 5.7-caliber ammunition, bottle *958 of benzocaine hydrochloride, and stamp bags - as well as a large amount of additional evidence - digital scales, several cell phones, a glass pipe, a counterweight, a bottle of lidocaine, over $700 cash, a money-counting machine, numerous collectable coins, gold, and silver. They also found a rent receipt issued to Hall for 2011 Main Street, as well as numerous other documents bearing Hall's name: a vehicle registration, a bank statement, a lottery claim form, a check, and a tax statement. They did not find anything indicating anyone other than Hall lived in the apartment.
Some of the items police recovered referred to Hall's other residence, 217 Highland Avenue, and police obtained a warrant to search that address. Upon its execution, officers recovered additional ammunition and heroin.
The trial court denied Hall's suppression motion and he proceeded to a jury trial at which the Commonwealth presented as evidence the items recovered during the search of 2011 Main Street. However, they did not introduce any items seized from 217 Highland Avenue. See N.T. Trial, 5/8/17, at 74-76, 80-103, 108-09.
After the close of evidence, the court held a charging conference at which Hall objected to a jury instruction on joint possession. N.T. Trial, 5/9/17, at 150. Hall argued that because the Commonwealth did not charge any of the other individuals present in 2011 Main Street with possession crimes, it was improper to instruct the jury that it could conclude that Hall jointly possessed the contraband with another person. The trial court overruled the objection and gave the instruction.
The jury convicted Hall of the above charges, and the trial court later sentenced him to a total of 87 to 300 months in prison. Hall filed a post-sentence motion challenging, among other things, the weight of the evidence, and it was denied by operation of law. After the trial court reinstated Hall's appellate rights nunc pro tunc , Hall filed this appeal.
Hall raises the following issues, which we have reordered for ease of discussion:
1. Whether the suppression court erred in failing to suppress the initial search and subsequent search warrant obtained for the residence located at 2011 Main Street, Aliquippa, Pennsylvania, where the individual for which there was an arrest warrant, along with the four (4) other persons (including [Hall] ), had stepped outside the residence, were detained outside the residence[,] and the search of the residence was then conducted under the premise of a "protective sweep," with no other specific or articulable facts that the area to be swept harbored any other individuals posing a danger to those on the arrest scene?
2. Whether the suppression court erred in failing to suppress the search warrant issued for the residence located at 217 Highland Avenue, Aliquippa, Pennsylvania, when mail located from the initial search and search warrant obtained from the residence at 2011 Main Street, Aliquippa, Pennsylvania, indicated that [Hall] had another residence/address?
3. Whether [Hall]'s convictions at all counts should be reversed because the Commonwealth failed to present sufficient evidence to prove beyond a reasonable doubt that [Hall] possessed and/or constructively possessed the controlled substances required to find him guilty of the crimes of which he was convicted?
4. Whether [Hall]'s convictions at all counts should be reversed because *959 the verdict rendered was against the weight of the evidence required to prove beyond a reasonable doubt that [Hall] was guilty of the crimes of which he was convicted?
5. Whether the trial court erred in permitting the jury instruction of joint possession over the objection of [Hall]'s counsel?
Hall's Br. at 10-11 (capitalization and answers omitted).
I. Suppression of Evidence Recovered From 2011 Main Street
Hall first argues that the trial court should have granted his motion to suppress the evidence recovered from 2011 Main Street. He contends that the protective sweep was illegal because Captain Pudik failed to articulate at the suppression hearing sufficient grounds to justify the sweep. Hall additionally argues that there was no valid threat to law enforcement because, according to Hall, all of the apartment's occupants were already on the front lawn by the time of the sweep, where they had submitted to police authority. Hall argues that because the sweep was illegal, the affidavit of probable cause supporting the search warrant, which was based on items seen during the sweep, was tainted. He thus argues the court should have suppressed the evidence recovered from 2011 Main Street.
Our standard of review on appeal of the denial of a motion to suppress is limited to determining "whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings." Commonwealth v. Griffin , 24 A.3d 1037, 1041 (Pa.Super. 2011) (quoting Commonwealth v. Lohr , 715 A.2d 459, 461 (Pa.Super.1998) ).[2] If the record supports the factual findings of the trial court, we reverse "only if there is an error in the legal conclusions drawn from those factual findings." Id. (citation omitted).
Police may perform a "protective sweep" as an incident to a lawful arrest, in order to protect the safety of police officers and others. See Buie v. Maryland , 494 U.S. 325, 327, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). In such circumstances, officers may look into "spaces immediately adjoining the place of arrest from which an attack could be immediately launched" without any degree of suspicion other than that necessary to support the arrest. Commonwealth v. Taylor , 565 Pa. 140, 771 A.2d 1261, 1267 (2001) (quoting Buie , 494 U.S. at 327, 110 S.Ct. 1093 ). A protective sweep beyond such "immediately adjoining" areas is proper if police can "articulate specific facts to justify a reasonable fear" for the safety of police officers or others. Taylor , 771 A.2d at 1267. We consider the information available to police at the time of the sweep from the perspective of a reasonably prudent police officer. Id. at 1267-68.[3]
Here, the testimony at the suppression hearing was "that the officers knocked at the front door of [Hall's] residence for several minutes before the door was opened and during such time they heard people moving about inside the residence." Suppression Ct. Op. at 6. After five people left the residence, Captain Pudik observed, from his lawful vantage point on the front porch, a box of ammunition inside the *960 apartment. Id. Based on the totality of the evidence, the suppression court found that Captain Pudik possessed specific and articulable facts, together with the rational inferences from those facts, "to support his concern that another individual posing danger may be inside the residence." Id. (quoting Taylor , 771 A.2d at 1268 ).
We agree with the suppression court's conclusion. Hearing the sounds of several people moving inside the apartment for several minutes before the occupants opened the door would cause a reasonably prudent officer to believe that that there was an unknown number of people in the apartment and that one of them might have hidden inside before the door was opened. After the door was opened, Captain Pudik saw "armor defeating" bullets inside the apartment. The information available to police at the time they performed the sweep gave rise to a "reasonable fear" that a person secreted in the apartment could be armed and dangerous. Taylor , 771 A.2d at 1267. Thus, articulable facts reasonably supported the officers' belief that the protective sweep was needed to ensure their safety. The trial court properly refused to suppress evidence seized from 2011 Main Street.
II. Suppression of Evidence Recovered From 217 Highland Avenue
Hall's second argument is that the trial court erred in denying his motion to suppress the evidence recovered from 217 Highland Avenue. However, the Commonwealth did not use any evidence recovered from this address as evidence at trial. The denial of this aspect of his Motion to Suppress was therefore at most harmless error. See Commonwealth v. Baez , 554 Pa. 66, 720 A.2d 711, 720 (1998) (applying harmless error analysis to affirm denial of suppression).
III. Sufficiency of the Evidence
Hall next argues that there was insufficient evidence to prove that he constructively possessed the cocaine, heroin, and paraphernalia. According to Hall, the only evidence that he possessed the contraband was that he rented the apartment at 2011 Main Street and was present there when the police arrested Vearnon. Hall also claims that the evidence was insufficient because "there is no evidence of whom [sic] or when the other individuals arrived at the residence at 2011 Main St.," and because, according to Hall, Vearnon actually controlled the contraband. Hall's Br. at 44-45.
To determine if the evidence was sufficient to support a guilty verdict, we view the evidence in the light most favorable to the Commonwealth, as verdict-winner, and draw all reasonable inferences in the Commonwealth's favor. We then ask whether the evidence was sufficient to permit a jury to find each and every element of the crimes charged beyond a reasonable doubt. Commonwealth v. Hoffman , 198 A.3d 1112, 2018 PA Super 297, at *3 (2018) (citing Commonwealth v. Feathers , 442 Pa.Super. 490, 660 A.2d 90, 94-95 (1995) ). We conduct this review de novo . Commonwealth v. Chambers , --- Pa. ----, 188 A.3d 400, 409 (2018). The Commonwealth may sustain its burden with wholly circumstantial evidence, and in matters of credibility, we defer to the finder of fact, who was free to believe all, some, or none of the evidence. Commonwealth v. Hewlett , 189 A.3d 1004, 1008 (Pa.Super. 2018).
Hall's sufficiency argument trains on the requirement that he has been in "possession" of the contraband. The Commonwealth may meet its burden of proving a possessory crime by showing actual possession, constructive possession, or joint constructive possession.
*961 Common wealth v. Thompson , 286 Pa.Super. 31, 428 A.2d 223, 224 (1981). "Constructive possession" is "the ability to exercise a conscious dominion over" the contraband. Commonwealth v. Vargas , 108 A.3d 858, 868 (Pa.Super. 2014). It usually comes into play when police find contraband somewhere other than on the defendant's person. Constructive possession requires proof that the defendant had knowledge of the existence and location of the item. Thompson , 428 A.2d at 224. The Commonwealth may prove such knowledge circumstantially. That is, it may prove that the defendant had knowledge of the existence and location of the items at issue "from examination of the totality of the circumstances surrounding the case," such as whether the contraband was located in an area "usually accessible only to the defendant." Id.
For the Commonwealth to prove constructive possession where more than one person has access to the contraband, "the Commonwealth must introduce evidence demonstrating either [the defendant's] participation in the drug-related activity or evidence connecting [the defendant] to the specific room or areas where the drugs were kept." Vargas , 108 A.3d at 868 (quoting Commonwealth v. Ocasio , 422 Pa.Super. 272, 619 A.2d 352, 354-355 (1993) ). Although the defendant's "mere presence" at a crime scene, standing alone, is insufficient to prove guilt, the jury does not have to ignore the defendant's presence in assessing the evidence of possession. Vargas , 108 A.3d at 869. "Indeed, presence at a scene where drugs are being processed and packaged is a material and probative factor which the jury may consider." Id. (citation omitted).
For example, in Vargas , the prosecution presented evidence that the police found the defendant "in a single, open hotel room, with drug-cutting and drug-packaging material strewn about the room, in plain view." Id. We concluded that such evidence was enough to prove that the defendant was aware "of the substantial heroin-cutting and heroin-packaging operation that was occurring within his midst" and that the defendant's presence in the room was "highly probative" and "support[ed] the inference that [the defendant] was an active participant in the activity." Id. In contrast, in Ocasio , 619 A.2d at 354-55, we found the evidence insufficient to prove constructive possession where police found drugs in a house where several people lived and no evidence linked the defendant to the rooms where police found the drugs.
Here, the evidence was sufficient to prove Hall's constructive possession of the drugs and paraphernalia at 2011 Main Street. The Commonwealth presented evidence that law enforcement found Hall in the one-bedroom apartment, as well as numerous documents showing that he lived there. One such document was a receipt issued to Hall for payment of the rent on the apartment. Police also found scales, packing materials, a machine to count money received from drug transactions, as well as precious metals and ammunition in the apartment. In addition, there were not only large amounts of drugs hidden in areas that would normally be accessible only to someone living in the apartment, but also drugs and packing materials in plain view. This was strong evidence against any claim that a resident of the apartment could have been ignorant of the drug operation.[4]
*962 All of this evidence, together, linked Hall to the specific areas where the illegal items were found and was sufficient circumstantial evidence of his possession of them. The jury was thus free to reject Hall's argument that he was merely present in the apartment but oblivious to the drug-dealing operation taking place in his home. See Vargas , 108 A.3d at 868 ; Ocasio , 619 A.2d at 354-55. The evidence was sufficient to establish that Hall knew about the narcotics and paraphernalia in the apartment, as well as their location, and had conscious dominion and control over them.
Hall's arguments that the evidence was insufficient because the Commonwealth did not prove "when the other individuals arrived at the residence," and that Vearnon was actually in control of the contraband, thus merit no relief. Although the Commonwealth did not present evidence of the comings and goings of others in the apartment at the time of the arrest, the absence of such evidence does not defeat, as a matter of law, the finding of Hall's constructive possession of the drugs and paraphernalia. In other words, the Commonwealth did not have to disprove others' constructive possession of the contraband, or establish which of the others was in joint possession, in order to present legally sufficient evidence of Hall's constructive possession of it. Hall's points in this regard were more properly arguments that the jury should find him not guilty. They do not render the evidence legally insufficient. His sufficiency claim fails.
IV. Weight of the Evidence
Hall also contends that the verdict was against the weight of the evidence. A trial court may only grant a new trial on a weight claim "when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." Commonwealth v. Clay , 619 Pa. 423, 64 A.3d 1049, 1055 (2013). We review the trial court's acceptance or rejection of a weight challenge for abuse of discretion. See id.
Hall fails to make any cogent argument in support of his weight claim. After reciting legal standards, he flatly states, "[T]he Court instructed on joint (constructive) possession. Hall avers that such an instruction was a misapplication of law." Hall's Br. at 46-47. Those statements at most amount to legal conclusions about the jury instructions; they are in no way arguments that the trial court abused its discretion in refusing to grant Hall a new trial because the verdict was against the weight of the evidence. See Commonwealth v. Widmer , 560 Pa. 308, 744 A.2d 745, 751-53 (2000) (explaining standard of review for weight claims).
Because Hall failed to present in his brief any meaningful argument in support of his weight claim, it is waived. See Commonwealth v. Kane , 10 A.3d 327, 331 (Pa.Super. 2010) (stating that an appellant must develop arguments sufficient for appellate review); Commonwealth v. Gooding , 437 Pa.Super. 193, 649 A.2d 722, 725 (1994) ("[W]hen an appellant fails to carry forward, or is indecipherably vague in, argumentation upon a certain point in his appellate brief, that point is waived").
Even if Hall had not waived it, his weight claim would not warrant relief. The trial court rejected Hall's weight argument because, in its view, the evidence "plainly" showed that Hall possessed the cocaine, the heroin, and the digital scales, and that he possessed the cocaine and heroin with the intention of delivering it. Trial Court *963 Opinion, filed January 22, 2018, at 12. In view of the evidence against Hall, the trial court's denial of Hall's weight claim was not an abuse of discretion.
V. Jury Instruction on Joint Possession
Finally, Hall asserts that the trial court should not have instructed the jury on joint possession for several reasons. He notes that he was the only person the Commonwealth charged with possession of contraband, and maintains that the prosecution "hinged" on the contention that Hall was the sole possessor of the contraband. Hall's Br. at 41. He further claims the Commonwealth failed to introduce any evidence of joint possession and as a result, by instructing the jury on joint possession, the trial court "introduced a concept to the jury ... which [the Commonwealth had] not attempt[ed] to prove at trial." Id.
The court properly gave the charge. We review jury instructions for a clear abuse of discretion or an error of law. Commonwealth v. Sandusky , 77 A.3d 663, 667 (Pa.Super. 2013). A jury charge is erroneous only if the charge as a whole is inadequate, not clear, or has a tendency to mislead or confuse a material issue. Id. The trial court properly gives a jury instruction if there is an evidentiary basis on which the jury could find the element, offense, or defense that is the subject of the instruction. See Commonwealth v. Washington , 547 Pa. 563, 692 A.2d 1024, 1028 (1997) ("[J]ury instructions regarding particular crimes or defenses are not warranted where the facts of the case do not support those instructions").
Here, the trial court instructed the jury as follows regarding joint possession:
Two or more persons may have joint possession of a controlled substance provided that each has the intent to exercise joint control over that substance and that each has the power to control it. Each of the joint possessors is regarded as having possession of the substance for purposes of [ ] criminal law.
N.T. Trial, 5/10/17, at 56-57; see also id. at 61.
The trial court explained in its Rule 1925(a) Opinion that it gave the instruction because the evidence at trial was sufficient to support a finding of joint possession:
[T]he evidence at trial showed that [Hall] was present at his home with multiple other individuals, including [Vearnon]; that [Hall] rented and occupied the residence; that drugs were found not only in plain view, but were also secreted inside the residence in their raw form. Additionally, a variety of packaging supplies, digital scales, a counter weight, a money counter, and lidocaine (which Captain Pudik testified is used as a cutting agent) were also found inside the apartment. This evidence allowed a reasonable inference that [Hall] used or allowed his home to be used as a place where drugs were cut, weighed, and packaged for further distribution.
Trial Ct. Op. at 15.
We agree that the evidence merited a charge on joint possession. Contrary to Hall's assertions, the Commonwealth's theory did not depend on his being the sole possessor of the contraband. Rather, the evidence supported a finding that Hall possessed the contraband in conjunction with at least one other person. The evidence included a large quantity of cocaine and heroin, suggesting a substantial drug-selling operation; police testimony that the drugs were both hidden and in plain view throughout the apartment, such that more than one person could have had access and control over them; and testimony that several people other than Hall were present *964 when the police arrived to make the arrest. Such evidence was sufficient to put the question of joint possession in issue.
In summary, none of Hall's issues merits relief. We therefore affirm the judgment of sentence.
Judgment of sentence affirmed.

35 P.S. §§ 780-113(a)(30), (a)(16), and (a)(32).

Lohr in turn was quoting Commonwealth v. Carlson , 705 A.2d 468, 469 (Pa.Super. 1998).

The Pennsylvania Constitution applies the same standards to protective sweeps as the United States Constitution. See Commonwealth v. Crouse , 729 A.2d 588, 597-98 (Pa.Super. 1999).

Hall's reliance on Commonwealth v. Juliano , 340 Pa.Super. 501, 490 A.2d 891, 894 (1985) (holding evidence was insufficient to establish possession where evidence showed defendant knew of satchel, but no evidence showed he knew what it contained), is thus misplaced.