J. A21043/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| ANTIONE GAINEY, | : | No. 2224 EDA 2018 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered July 24, 2018,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0001165-2017

BEFORE:  BOWES, J., OLSON, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED DECEMBER 04, 2019**

Antione Gainey appeals from the July 24, 2018 aggregate judgment of sentence of 11½ to 23 months' imprisonment, followed by 5 years' probation, imposed after he was found guilty in a bench trial of unlawful possession of a firearm.[1]  After careful review, we affirm the judgment of sentence.

The suppression court summarized the relevant facts of this case as follows:

> During the suppression hearing, the Commonwealth presented the testimony of Philadelphia Police Detective Myrna Rivera of the East Detective Division Warrant Unit, who testified that, on December 14, 2016, at about 6:45 a.m., she and three police officers proceeded to 4107 North 5th Street to serve an arrest warrant and two absconder warrants on [a]ppellant. Upon arrival at that location, the officers were met at the door by Calvin Gainey.  After being told of the

---

[1] 18 Pa.C.S.A. § 6105.

reason for police presence, he advised the detective that [a]ppellant was in a second floor front bedroom. The other officers proceeded to the bedroom and took [a]ppellant, who was hiding in a bathroom, into custody while Detective Rivera remained downstairs speaking to Calvin Gainey.

While in the bedroom, one of the officers, Officer Shaw, observed a case of live .22 caliber bullets sitting in plain view on top of the mattress of a bed situated in the room. Upon being informed of the presence of the bullets, Detective Rivera went up to the bedroom and recovered the case of bullets. The detective then ordered the residence secured so that a search warrant could be obtained.

Moreover, when the detective was inside the bedroom, she observed additional live bullets in plain view and also that the mattress in the bedroom was tilted. In her experience, the mattress was positioned in such a manner that caused her to believe that someone might be hiding behind or under it who could be a danger to her own and the officers' safety. With the assistance of one of the other officers, Detective Rivera lifted the mattress revealing a black handgun between the bed's mattress and box spring along with additional bullets. These items were collected by Detective Rivera.

Police thereafter obtained a search warrant for the property. Upon executing the warrant, police recovered identification cards for [a]ppellant and an additional bullet from the front bedroom.

Suppression court opinion, 12/5/18 at 1-2 (citations to notes of testimony omitted).

Appellant was charged with one count of unlawful possession of a firearm in connection with this incident. On May 19, 2017, appellant filed an *omnibus* pre-trial motion to suppress the firearm and other physical evidence

seized from the warrantless search of his bedroom. The suppression court held an evidentiary hearing on November 2, 2017, at the conclusion of which appellant's motion was held under advisement. On November 27, 2017, the suppression court entered an order denying appellant's suppression motion. Appellant waived his right to a jury and proceeded to a bench trial upon stipulated evidence[2] on May 25, 2018. On July 24, 2018, the trial court found appellant guilty of unlawful possession of a firearm and sentenced him to

---

[2] At trial, the parties stipulated to the following:

> On December 14, 2016, police arrived at [appellant's] residence to serve an arrest warrant on [appellant] and were directed by a third party to [appellant's] room. (Notes of testimony, 5/25/18 at 7-8.) [Appellant] was found outside that room. (**Id.** at 8.) Inside the room, they found a loaded .22 caliber Beretta Model 21A, 86 .22-caliber live rounds, three 7.62 rifle rounds, a box of .45-caliber live rounds, one .357 round, and a school ID and parole card in [appellant's] name. (**Id.** at 8-9.) [Appellant] has two prior Possession With Intent to Deliver felony convictions, making him ineligible to carry a firearm. (**Id.** at 10.) If called to testify, [appellant's] Aunt would testify that [appellant] lived at the address where the firearms were recovered. (**Id.** at 10-11.) Additionally[,] photographs of [appellant's] room, [appellant's] warrants for arrest, [appellant's] criminal record, and a Firearms Identification Unit Laboratory Report proving firearms were operable were all entered into evidence. (**Id.** at 11.)

Trial court opinion, 10/11/18 at 1 n.1 (notes of testimony citations reformatted).

11½ to 23 months' imprisonment, followed by 5 years' probation.  This timely appeal followed.[3]

Appellant raises the following issue for our review:

> Did not the [suppression] court err in denying [appellant's] motion to suppress the firearm and other items recovered incident to the illegal search of his bedroom without a warrant?

Appellant's brief at 3.

Our standard of review when addressing a challenge to a trial court's denial of a suppression motion is well settled.

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.  Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.  Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous.

***Commonwealth v. Jones***, 121 A.3d 524, 526 (Pa.Super. 2015) (citation omitted; brackets in original), ***appeal denied***, 135 A.3d 584 (Pa. 2016).

Appellant contends that the suppression court erred in denying his motion to suppress the firearm and ammunition found under a mattress in his

---

[3] Appellant and the trial court complied with Pa.R.A.P. 1925.

bedroom because "the warrantless search between the mattress and box spring exceeded the permissible scope of a protective sweep pursuant to an arrest." (Appellant's brief at 10 (extraneous capitalization omitted).) Appellant maintains that the suppression court's "factual finding that the mattress was tilted in such a manner permitting Detective Rivera to form a reasonable belief that someone could be hiding under it . . . is not supported by the record." (*Id.* at 11 (internal quotation marks omitted).) We disagree.

"Both the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures." *Commonwealth v. Bostick*, 958 A.2d 543, 550 (Pa.Super. 2008), *appeal denied*, 987 A.2d 158 (Pa. 2009) (citation and internal quotation marks omitted). "[W]arrantless searches and seizures are . . . unreasonable *per se*, unless conducted pursuant to a specifically established and well-delineated exception to the warrant requirement." *Id.* at 556. One well-recognized exception to the warrant requirement is the protective-sweep doctrine. "A protective sweep is a quick and limited search of [the] premises, incident to an arrest and conducted to protect the safety of police officers or others." *Commonwealth v. Harrell*, 65 A.3d 420, 435 (Pa.Super. 2013) (citation and internal quotation marks omitted), *appeal denied*, 101 A.3d 785 (Pa. 2014). This court has recognized that a protective sweep "cannot be lengthy or unduly disruptive . . . and target only those areas where a person could reasonably be expected

to hide." ***Commonwealth v. Witman***, 750 A.2d 327, 336 (Pa.Super. 2000)

(citation omitted), ***appeal denied***, 764 A.2d 1053 (Pa. 2000), ***cert. denied***,

534 U.S. 815 (2001).

> Police may perform a 'protective sweep' as an incident to a lawful arrest, in order to protect the safety of police officers and others. In such circumstances, officers may look into spaces immediately adjoining the place of arrest from which an attack could be immediately launched without any degree of suspicion other than that necessary to support the arrest. A protective sweep beyond such immediately adjoining areas is proper if police can articulate specific facts to justify a reasonable fear for the safety of police officers or others. We consider the information available to police at the time of the sweep from the perspective of a reasonably prudent police officer.

***Commonwealth v. Hall***, 199 A.3d 954, 959 (Pa.Super. 2018) (citations,

internal quotation marks, and footnote omitted), ***appeal denied***, 206 A.3d

1028 (Pa. 2019).

Upon review, we find that the police officers' protective sweep of

appellant's bedroom in this case was constitutionally permissible. The record

reveals that on the morning of December 14, 2016, Philadelphia Police

Detective Myrna Rivera and three members[4] of the East Detective Warrant

Unit went to appellant's home to execute an arrest warrant and two absconder

warrants on him. (Notes of testimony, 11/2/17 at 7-8, 20.) Upon arriving at

the home, the officers were informed by appellant's cousin, Calvin Gainey,

---

[4] The first names of Officers Shaw, Redanauer, and Flynn are not indicated in the suppression hearing transcript.

that appellant was located in the upstairs bedroom. (*Id.* at 8.) Detective Rivera remained downstairs while the other officers proceeded to the second floor of the residence and subsequently found appellant hiding in a bathroom adjacent to the upstairs bedroom. (*Id.* at 8-10.) During the course of apprehending appellant, Officer Shaw observed a case of .22 caliber ammunition in plain view on the top of the mattress in the upstairs bedroom. (*Id.* at 9.) Detective Rivera testified that after she went upstairs, she observed "bullets on the bed, and bullets across from the bed inside of the bedroom." (*Id.* at 9, 14.) Detective Rivera further testified that the bed and the mattress were "tilted" or positioned in such a way that she reasonably believed that someone who posed a danger to their safety could be hiding behind it. (*Id.* at 9, 17.) As a result, Detective Rivera and Officer Shaw briefly lifted up the mattress to see if anyone was underneath it and discovered a loaded black handgun and three bullets between the mattress and the box spring. (*Id.* at 9, 17, 28.)

Here, it is evident that the officers' brief inspection under appellant's bedroom mattress was "conducted to protect the[ir] safety," *Harrell*, 65 A.3d at 435, and was not "lengthy or unduly disruptive." *Witman*, 750 A.2d at 336. Detective Rivera "articulate[d] specific facts" at the suppression hearing, based on the information available to her at the time of the sweep, including the presence of multiple rounds of ammunition in plain view in the bedroom suggesting a firearm was nearby, "to justify a reasonable fear for the safety

of [her fellow] police officers[.]" **Hall**, 199 A.3d at 959. Moreover, the sweep "target[e]d only those areas where a person could reasonably be expected to hide" – in this instance, under the shifted bedroom mattress. **Witman**, 750 A.2d at 336. Nor is the suppression court's finding that someone could potentially conceal themselves under a shifted mattress, as Detective Rivera's testimony at the suppression hearing suggests, entirely unreasonable. As the suppression court reasoned:

> THE COURT: I'm not thinking in terms of [a person] hiding between a mattress and box spring. That would be pretty silly.
>
> I'm saying if the mattress is ajar -- you have a box spring, you've got a mattress. It usually goes on top of it.
>
> If I walk into a room and I see it like this, well, is it reasonable for me to assume if I'm looking at it that maybe somebody is hiding underneath here and you walk over and lift it up and say, "Oh, there's a gun"?
>
> Because believe it or not, I've actually played hide-and-seek with my kids in the past. And I've actually pulled the mattress off the box spring a little bit to secrete myself. Not in between the mattress and the box spring. I'm using the mattress almost like a roof on a fort.

Notes of testimony, 11/2/17 at 36.

Based on the foregoing, we find that the suppression court's factual findings are supported by the record and the court's legal conclusion that the firearm and ammunition were lawfully seized pursuant to a constitutionally

permissible protective sweep is correct. Accordingly, we discern no error on the part of the suppression court in denying appellant's motion to suppress.[5]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/4/19

---

[5] Appellant raises multiple alternative arguments in support of his claim that the suppression court erred in denying his suppression motion. Specifically, appellant contends that the search was not justified under the more relaxed rules governing searches and seizures that are applied to probationers; and that "there was no independent source" for the firearm and bullets recovered, "nor would they have been inevitably discovered." (Appellant's brief at 12, 14 (extraneous capitalization omitted).) Because we have determined that the suppression court properly denied appellant's suppression motion on the basis that the firearm and other physical evidence was lawfully seized pursuant to the protective sweep doctrine, we need not consider these alternative theories for affirming the suppression court's order.