J-S19026-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
MARCUS EDWARD GARNER :
:
Appellant : No. 15 MDA 2023

Appeal from the Judgment of Sentence Entered October 20, 2022
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0003978-2021


BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED: OCTOBER 6, 2023**

Marcus Edward Garner appeals from the judgment of sentence entered following his convictions for second-degree murder, burglary, and conspiracy to commit burglary.[1] Garner challenges the sufficiency and weight of the evidence and the trial court's imposition of separate sentences for burglary and second-degree murder. We affirm in part and vacate in part.

The trial court thoroughly recounted the evidence presented at Garner's jury trial against him and his co-defendant, Mason Quailes. *See* Trial Court Opinion, filed Mar. 10, 2023, at 4-12. To summarize, William Anderson testified that he had been driving in Steelton when he heard three gunshots. He then saw a man dressed in black run down the steps on the side of a house and stop to look at the front doorway. As Anderson drove past the front of the

_____

[1] Respectively, 18 Pa.C.S.A. §§ 2502(b), 3502(a)(1)(i), and 903.

house, he saw another man — later identified as Ismail Lewis — lying on the ground just inside the doorway. There was a third man standing above Lewis with a gun pointed down at Lewis, yelling at him. This third man wore a white T-shirt. As Anderson drove away, he heard another two "loud bangs." N.T., Oct. 17-20, 2022, at 131. Anderson then called 911.

The responding officer found Lewis lying dead in his front doorway. The police recovered multiple bullets and shell casings near the entranceway of Lewis's home, and at least one had been discharged from a gun fired from inside the residence. A firearms expert testified that the bullets the police recovered from the scene had been fired by two different firearms.

Shnasia Peterson testified that, with help from Aubriana Parisi, she had arranged for Quailes and Garner to rob Lewis in his home in retaliation for domestic abuse Lewis had inflicted on her earlier that day. Peterson testified that she told the men not to kill Lewis. She stated that after the incident, Quailes returned to her house and informed her that "shit went left." *Id.* at 298. Peterson then saw Garner run up her street, and it appeared to her that he was carrying a gun in his pants. Peterson acknowledged that she was testifying as part of a plea agreement.

Parisi admitted that she told the police that she discussed the robbery with Peterson and Quailes. She also stated that Quailes had been wearing all black that day.

Quailes testified on his own behalf. He stated that rather than scheming to rob Lewis, he spoke with Peterson about Lewis's assault on her that

morning, and then a friend of his, Keyshawn Carter, drove him to Lewis's house. Quailes knocked on Lewis's door to speak with him about the assault, and Lewis immediately began to fight him. During the scuffle, Quailes heard gunshots and saw Lewis fall, but did not see who shot him. Quailes testified that he had not had a gun on him during the confrontation, but that Carter had had one. Quailes also testified that he had been wearing black that day.

On cross-examination by the Commonwealth, Quailes denied that in a previous proffer to the police he had identified Garner as the shooter. On rebuttal, the officer who took the proffer testified that Quailes had implicated Garner.

Another police officer testified that within two hours of the shooting, the police pulled over a vehicle for a traffic offense and identified Quailes and Garner as the passengers.

The jury found Garner guilty of the above-listed offenses.[2] The court sentenced him to mandatory life imprisonment for second-degree murder, and imposed a concurrent term of five to 10 years' imprisonment for burglary. The court imposed no penalty for conspiracy. Garner filed a post-sentence motion challenging the weight of the evidence, which the trial court denied.

Garner appealed, and raises the following issues:

I. Was the evidence insufficient to convict . . . Garner of count six, burglary, where there was no evidence that . . . Garner unlawfully entered the residence, he was charged in count six as a principal,

---

[2] The jury also convicted Quailes of the same offenses — second-degree murder, burglary, and conspiracy to commit burglary. **See** N.T. at 502-03.

- 3 -

not an accomplice, and there is no conspiratorial liability in Pennsylvania? . . .

II. Was the evidence insufficient to convict . . . Garner of second-degree murder because there was insufficient evidence to prove . . . Garner committed the underlying crime of burglary as a principal? . . .

III. Did the trial court abuse its discretion in finding that the verdicts on count two (second-degree murder), count six (burglary), and count seven (conspiracy to commit burglary) were not against the weight of the evidence? . . .

IV. Did the trial court impose an illegal sentence when it imposed a sentence on count six, burglary, to run concurrently with the sentence on count two, second-degree murder, instead of merging the burglary offense into the second[-]degree murder offense?

Garner's Br. at 3-4.

## I. The Sufficiency of the Evidence – Burglary

Garner first argues the evidence was insufficient to support a burglary conviction because there was no evidence that he entered Lewis's house. Garner asserts that Anderson testified he saw one person running down the steps on the side of the house following the gunshots and saw a different person standing over Lewis in the doorway. He adds that Quailes testified he was in the doorway with Lewis when Lewis was shot. Garner argues that, when considered in combination, this testimony proves that Garner was the person Anderson saw running down the steps **outside** of the house. Garner points out that although Peterson and Parisi testified he had conspired to rob Lewis, no one testified he had ever actually entered the residence. He stresses that the testimony that Quailes had previously identified him as the shooter was

- 4 -

not substantive evidence against him, as the court had rightfully instructed the jury.

Garner further posits that his conviction for burglary cannot be based on accomplice liability, because the Commonwealth filed a bill of information charging him as a principal in the burglary, rather than as an accomplice. He likewise asserts that the trial court charged the jury with finding that he had entered the house, and that the verdict slip had not included an option for accomplice liability on the burglary charge. He also argues that he cannot be held liable for burglary on the basis that he conspired to commit burglary, as conspiracy is a separate criminal offense.

We engage in *de novo* review of the trial evidence upon a sufficiency challenge. ***Commonwealth v. Hall***, 199 A.3d 954, 960 (Pa.Super. 2018). "To determine if the evidence was sufficient to support a guilty verdict, we view the evidence in the light most favorable to the Commonwealth, as verdict-winner, and draw all reasonable inferences in the Commonwealth's favor." ***Id.*** "We then ask whether the evidence was sufficient to permit a jury to find each and every element of the crimes charged beyond a reasonable doubt." ***Id.*** The Commonwealth may prove each element of a crime through the presentation of wholly circumstantial evidence. ***Id.*** We do not consider the weight of the evidence or credibility of the testimony. On those matters, "we defer to the finder of fact, who was free to believe all, some, or none of the evidence." ***Id.***

Garner was convicted of burglary under 18 Pa.C.S.A. § 3502(a)(1)(i). Under that subsection, a person commits burglary "if, with the intent to

commit a crime therein," he or she "enters a building or occupied structure, or separately secured or occupied portion thereof, that is adapted for overnight accommodations in which at the time of the offense any person is present and the person commits, attempts or threatens to commit a bodily injury crime therein[.]" 18 Pa.C.S.A. § 3502(a)(1)(i).

Garner limits his sufficiency challenge to arguing only that the evidence was insufficient to prove that he entered Lewis's house. On this point there was ample evidence. Anderson testified that two people were involved: one who was outside, dressed in black, and the other who was inside the doorway, aiming a gun at Lewis. The police found Lewis dead inside his doorway, and ballistics evidence showed that shots had been fired from two firearms, with one shot coming from inside the house. Peterson testified that Garner and Quailes had intended to rob Lewis inside his home, that both men returned to her residence after the incident, and that Garner had been carrying a firearm upon his return. The police confirmed that Garner and Quailes were traveling together within two hours following the incident. Notably, both Parisi and Quailes testified that Quailes had been wearing black that day. This evidence is sufficient to prove beyond a reasonable doubt that Garner entered the house.

## II. The Sufficiency of the Evidence – Second-degree Murder

Garner next argues that the evidence was insufficient to prove he committed second-degree murder because "[t]he crime of second-degree murder requires that a defendant be convicted of at least one of the listed

predicate felonies[.]" Garner's Br. at 25 (citing 18 Pa.C.S.A. § 2502). He asserts that because the Commonwealth alleged he committed burglary as a principal as the predicate offense to the second-degree murder charge, and the evidence was insufficient to support that conviction, the evidence was also insufficient to prove he committed second-degree murder. Because this argument hinges on whether the evidence was sufficient to support Garner's burglary conviction, and we hold that it was, this claim necessarily fails.[3]

### III. The Weight of the Evidence

Garner argues the verdicts were against the weight of the evidence. He contends Peterson's testimony was "uncertain, self-contradictory, and evasive[.]" Garner's Br. at 26. He points out that Peterson has a history of deceptive behavior, as evidenced by her criminal record. He also asserts that she contradicted her earlier police statement and grand jury testimony when she testified that she had discussed the robbery with Parisi and Quailes. Garner further highlights that Peterson was testifying as part of a plea offer, for which the Commonwealth withdrew its charges of first-degree murder, second-degree murder, and conspiracy to commit first-degree murder. Garner contends that the testimony of Anderson and Quailes, taken together,

---

[3] We also note that the statute does not require that the defendant be charged with and convicted of a predicate felony offense before being convicted of second-degree murder, so long as the evidence establishes that the defendant was engaged in the commission of a felony as either a principal or an accomplice when the killing occurred. *See* 18 Pa.C.S.A. § 2502(b); *Commonwealth v. Miller*, 35 A.3d 1206, 1212 (Pa. 2012); *Commonwealth v. Giles*, 456 A.2d 1356, 1359 (Pa. 1983).

establish that he never entered the house, and their testimony, as "a neutral witness and a co-defendant who admitted his role in the victim's death without any benefit," should have carried far greater weight than Peterson's testimony. *Id.* at 32.

We review a challenge to the weight of the evidence for an abuse of the trial court's exercise of discretion. **Commonwealth v. Roane**, 204 A.3d 998, 1001 (Pa.Super. 2019). Because the jury is tasked with assessing the credibility of the evidence in the first instance, a trial court should only award a new trial "when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." **Commonwealth v. Fallon**, 275 A.3d 1099, 1107 (Pa.Super. 2022) (citation omitted). "We give great deference to the trial court's decision regarding a weight of the evidence claim because it had the opportunity to hear and see the evidence presented." **Roane**, 204 A.3d at 1001 (internal quotation marks and citation omitted).

The trial court did not abuse its discretion in denying Garner's challenge to the weight of the evidence. Although the jury had reason to question Peterson's credibility, it also had reason to question Quailes' credibility. Not only was he testifying on his own behalf, and in contradiction of Peterson's and Parisi's testimony, his narrative contradicted his former proffer. And, his self-serving testimony that he was fighting with Lewis, unarmed, in the doorway, when an unknown assailant shot Lewis, conflicts with Anderson's testimony that the shooter was with Lewis in the doorway while another

person was just outside. Quailes' denial of Garner's involvement also conflicts with the police's observation of him traveling with Garner within two hours following the incident. Nor does Quailes' testimony, if believed, necessarily exculpate Garner, as Quailes claims he did not see who shot Lewis. Ultimately, the jury was not required to weigh the conflicting testimony in the way Garner advances, and a new trial was not required.

## IV. Sentencing – Merger

Finally, Garner argues that the court erred in sentencing him to serve a separate sentence for his burglary conviction. He claims that offense should have merged with his second-degree murder conviction because it was the predicate offense for that conviction. He contends this issue is not waived as it implicates the legality of his sentence. Garner requests that we vacate the sentence without remand because the court imposed a mandatory sentence for second-degree murder, and therefore vacating the sentence will not affect the overall sentencing scheme.

The Commonwealth concedes the merit of this issue. *See* Commonwealth's Br. at 7. The trial court, in its opinion, states that it agrees "that imposing a separate sentence for the crime of burglary was in error" and requests we vacate the judgment of sentence and remand for resentencing. Trial Ct. Op. at 15.

"A claim that crimes should have merged for sentencing purposes raises a challenge to the legality of the sentence. Therefore, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Leaner***,

202 A.3d 749, 784 (Pa.Super. 2019) (quoting *Commonwealth v. Quintua*, 56 A.3d 399, 400 (Pa.Super. 2012)). "A challenge to the legality of the sentence may be raised as a matter of right, is non-waivable, and may be entertained so long as the reviewing court has jurisdiction." *Id.* (citation omitted).

"[A] sentencing court has no authority to impose a sentence for felony murder as well as a sentence for the predicate offense." *Id.; see also Commonwealth v. Adams*, 39 A.3d 310, 325 (Pa.Super. 2012) (vacating sentence imposed for burglary conviction where it was predicate offense for second-degree murder conviction). However, where we vacate a sentence without upsetting the overall sentencing scheme, we need not remand. *Commonwealth v. Lomax*, 8 A.3d 1264, 1268 (Pa.Super. 2010).

Here, the court erred in imposing a five-to-10-year sentence for Garner's burglary conviction in addition to the sentence of life imprisonment for second-degree murder. *Adams*, 39 A.3d at 325. We therefore vacate the sentence for burglary. However, because the remaining sentence consists only of a mandatory term of life imprisonment, our decision does not impact the court's sentencing scheme such that remand for resentencing is necessary.

Judgment of sentence vacated as to burglary. Judgment of sentence affirmed in all other respects.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>10/6/2023</u>