J-S45037-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 391 MDA 2024 |

Appeal from the Dispositional Order Entered February 15, 2024
In the Court of Common Pleas of at No(s): CP-36-JV-0000896-2023

| | | |
|---|---|---|
| IN THE INTEREST OF: J.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 392 MDA 2024 |

Appeal from the Order Entered February 15, 2024
In the Court of Common Pleas of Lancaster County Juvenile Division at No(s): CP-36-JV-0000881-2023

| | | |
|---|---|---|
| IN THE INTEREST OF: J.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 393 MDA 2024 |

Appeal from the Dispositional Order Entered February 15, 2024
In the Court of Common Pleas of Lancaster County Juvenile Division at No(s): CP-36-JV-0000807-2023

| | | |
|---|---|---|
| IN THE INTEREST OF: J.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |

J-S45037-24

APPEAL OF: J.F.

:
:
:
:
:
:
:
:     No. 394 MDA 2024

Appeal from the Dispositional Order Entered February 15, 2024
In the Court of Common Pleas of Lancaster County Juvenile Division at
No(s): CP-36-JV-0000880-2023

BEFORE: OLSON, J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:        **FILED: MARCH 13, 2025**

J.F. appeals from the dispositional orders entered following his adjudications of delinquency for numerous offenses: rape (threat of forcible compulsion), involuntary servitude (extortion), sexual assault, sexual extortion, sexual abuse of children (photographing sexual acts), sexual abuse of children (dissemination of sexual photographs), sexual abuse of children (child sexual abuse material), criminal use of a communication facility, burglary, stalking, harassment, and for violation of a Protection from Abuse Act order.[1] He challenges the admission and sufficiency of the evidence. We affirm.

The victim testified at J.F.'s January 2024 delinquency hearing that she has known J.F. since kindergarten. N.T., Adjudicatory Hearing, 1/25/24, at 158. The victim and J.F. were friends until eighth grade, when they started dating and began to have a sexual relationship. *Id.* at 158, 159. The two

_____

[1] 18 Pa.C.S.A. §§ 3121(a)(2), 3012(b)(7), 3124.1, 3133(a)(2), 6312(b)(2), (c), (d), 7512(a), 3502(a)(1)(i), 2709.1(a)(1), and 2709(a)(2), and 23 Pa.C.S.A. § 6113(a), respectively.

- 2 -

ended their romantic relationship in May 2023 during the victim's freshman year of high school. *Id.* at 159, 168. They remained in contact via text message and continued to see each other at school. *See id.* at 166-270.

In June 2023, J.F. sent the victim a naked photo of the victim that she was unaware he had taken. *Id.* at 209-12. J.F. told her he had seven photos showing her nude. *Id.* at 215. The victim asked J.F. to "[d]elete them permanently[.]" *Id.* at 212. J.F. told her that she would have to answer his questions before he would delete them. *Id.* J.F. then said that he would only delete them on the condition that they could be "friends with benefits." *Id.* at 214. J.F. also told the victim that he had a video of her that he also would not delete unless she had sex with him. *Id.* at 215. The victim testified that following this encounter, J.F. raped her. *Id.* at 217-18. The next day, J.F. told the victim that he deleted the photographs. *Id.* at 222. J.F. continued to force the victim to have sex with him, and when she asked him to stop, "he would threaten to leak the photos[.]" *Id.* at 252-55.

In July 2023, the victim called the police to report the rapes because J.F. had threatened to share naked photographs of her if she would not have sex with him. *Id.* at 233-35, 269-72. The victim stopped speaking with J.F. after this.

Three months later, on October 16, 2023, the victim woke up at 3:30 a.m. and saw J.F. in her bedroom wearing a black jazz band hoodie and sweatpants. *Id.* at 281-82. She explained that J.F. "was in between the foot of my bed and halfway up my bed[.]" *Id.* at 283. When she saw J.F., she

screamed and J.F. ran, and her father came to her room. *Id.* at 284. The victim then went downstairs to grab a bat and noticed that the door to the storage area was open. *Id.* at 285. The victim stated that she normally sleeps with her door closed but when her father entered her room after she screamed, he did not have to open the door. *Id.* at 286. She further testified regarding J.F.'s ability to enter the home.

> Q [(Commonwealth)]: From your knowledge of [J.F.] in the time that you guys were dating and were friends, would he know how to get into your house?
>
> A [(Victim)]: Yes.
>
> Q: Okay. And how would he know?
>
> A: He would know because he had – we had known him for a very long time, since around kindergarten. We had had – we have had multiple parties around Christmastime when him and his family would come over.
>
> He had been in the storage room of my house where our pool table used to be. We don't always lock the door, so when we would go out and, like play basketball and something with some of the younger children, he would see that the door wasn't locked.

*Id.* at 284-85.

The victim's father testified that he woke up to the victim screaming on October 16, 2023. N.T., Adjudicatory Hearing, 1/25/24, at 87. When he arrived in the victim's room, he noticed her bedroom door was open, which he found odd because the family slept with their doors closed. *Id.* at 91. When he got to her room, the victim told him that J.F. was in the house. *Id.* at 92.

When police later questioned J.F., he said he was not in the home and claimed he was at a friend's house. *Id.* at 426.

During cross-examination of the victim, the Commonwealth objected to questions about her sexual relationship with J.F.:

> [Commonwealth]: Your Honor, I'm going to object right now for relevancy. I don't see where this conversation is relevant to the cases at hand.
>
> The Court: Well, they have all been introduced as an exhibit. What is the relevance of this particular section, [defense counsel]?
>
> [Defense Counsel]: Well, the relevance, Your Honor, it goes into their relationship prior to anything that was testified before.
>
> [Commonwealth]: Your Honor, in that case –
>
> [Defense Counsel]: And I think that that is relevant to show the state of mind of this witness.
>
> The Court: On May 1st, how is that tied to the issues at the end of May, June and July?
>
> [Defense Counsel]: It goes to the fact that they were willing and able to have a sexual relationship that was quite unusual and it was willing and that's what I want to bring up.
>
> [Commonwealth]: Your Honor, this is a direct violation of the Rape Shield Statue, 3104. Defense has to file a motion to lift Rape Shield in order to discuss previous relationships.
>
> Additionally, she can withdraw consent. This was while they were in a relationship. They broke up and she clearly withdrew consent. It's not relevant to what happened in June and it's a direct violation of the Rape Shield Statue under – it's Title 18, 3104 that defense must file a motion in order to talk about any prior sexual relationship between the two of them and also the Rule of Criminal Procedure 412 that a defendant who wants to offer evidence of a victim's

past sexual conduct must file a written motion in advance of trial.

No such motion has been filed.

[Defense Counsel]: Your Honor, that's not true. This was given to us by way of discovery and we are not talking about another individual that I am not bringing up any type of sexual contact with. It would be [J.F.], my client, and her.

\*\*\*

The Court: . . . I reviewed the objection the Commonwealth made and [defense counsel's] response.

I guess my only question, [defense counsel], do you have any case law that you don't have to file a motion before this? Every juvenile case I looked at, and adult case, there was always a motion filed even if it was the same defendant.

[Defense Counsel]: Well, Your Honor, the direct testimony that was put on today indicated that the witness, the alleged victim in this case, had an incident with my client at the high school and he was actually, quote, unfortunately, fingering her. So that would have been well before. So that would open the door to whatever I would like to bring in regarding this incident. That was brought up by the prosecution.

[Commonwealth]: Your Honor, that was brought up because there was some confusion with regards to other witness testimony that had already been presented about something happening in May.

I only brought that up to establish that that was in May of 2022, not May of 2023, and that that incident cannot be used to establish any kind of intent or reason for her to fabricate any of the allegations.

That does not fling open the door for him to discuss any past sexual conduct with the defendant. If he wants to explore that specific incident further, he can, but it does not fling open the door for him to discuss any past sexual conduct without filing of that motion for Rape Shield.

[Defense Counsel]: Again, Your Honor, I would say that it clearly opened up the door, and then I would be able to talk

- 6 -

about incidents that were only a month or two months before the actual allegation of rape.

The Court: I don't – I'm going to sustain the objection, [defense counsel], because the case law is different than what you just said that I reviewed on how close in time any of the incidents might have been.

You can certainly ask the question about the incident that the district attorney did bring up. She certainly opened the door to that incident, the facts surrounding that incident, but I am sustaining it on the other grounds of other incidences that may be recorded somewhere in the past.

*Id.* at 302-06.

Counsel then asked the victim about a specific sexual encounter with J.F. *Id.* at 337. The Commonwealth again objected, and the court sustained the objection, citing the Rape Shield Law. *Id.*

Q. Okay. And do you remember, you made a statement that you didn't mind doing that at one time?

A [(Victim)]. I did not mind doing it during the relationship because while it was not something that I understood, I was willing to give it a --

[Commonwealth]: Your Honor, I'm going to object as this goes to consensual sexual relations during the relationship. It's not relevant and it would have to have been subject to the Rape Shield motion.

The Court: [Defense counsel]?

[Defense Counsel]: Your Honor, she answered it already and I would say that it's not subjected to the Rape Shield about -- about the vomit. She said that she was willing to do it.

[Victim]: During the relationship.

The Court: I'm going to sustain it based under the Rape Shield Law. You can continue.

*Id.* at 337.

J.F. testified that he entered the victim's home because the victim left the door unlocked. N.T., Adjudicatory Hearing, 1/26/24, at 489. Once he entered the home, he went to the victim's bedroom and saw that "[she] was subsequently waiting in her doorway." *Id.* at 493. According to J.F., as he approached the victim, she began screaming and he left through the front door. *Id.* at 494. J.F. also testified that he told the police he was not in the victim's home "because I did not want [the victim] to face legal repercussions for filing a false report and also to protect her from her parents." *Id.* at 497.

The court adjudicated J.F. delinquent of the above-referenced offenses. This timely appeal followed.

J.F. raises the following questions:

> I. Did the [c]ourt err in excluding testimony regarding consensual acts between the victim and [J.F.] that occurred during their prior romantic relationship based on the Rape Shield Law at 18 Pa.C.S.A. §3104 where this type of testimony met an exception noted in the Rape Shield Law?
>
> II. Was the evidence presented by the Commonwealth insufficient to prove beyond a reasonable doubt that the Juvenile was guilty of burglary pursuant to 18 Pa.C.S.A. §3502 where the evidence was insufficient to prove that the Juvenile entered the home with the intent to commit a crime therein?

J.F.'s Br. at 6 (answers of trial court omitted).

J.F. first argues that the juvenile court erred "in excluding testimony regarding consensual acts between the victim and [J.F.] that occurred during their prior romantic relationship[.]" *Id.* at 14. J.F. maintains that the court erroneously concluded that the Rape Shield statute required that he "file a

written motion and offer of proof for the evidence to be considered by the court." *Id.* at 15. He also disputes the court's determination that even if an exception to the Rape Shield law applied, a written motion and offer of proof were still required. *Id.* at 16. J.F. further contends that the court erroneously prevented him from testifying "about whether he had consensual sex with the victim on previous occasions where he had entered the victim's home." *Id.* at 18.

J.F. claims that a written motion was not required because the Rape Shield Law does not apply to "evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue." *Id.* at 16-17 (citing 18 Pa.C.S.A. § 3104(a)). J.F. further asserts that he should have been able to offer testimony about his past sexual conduct with the victim because the victim opened the door by testifying that the two had sex while they were dating. *Id.* at 18. He also points out that the victim testified about them being suspended from school after they committed a sexual act in a classroom together. *See id.*

Section 3104 of the Crimes Code, known as the Rape Shield Law, applies to numerous crimes including sexual offenses. *See* 18 Pa.C.S.A. § 3104(c). The law provides:

> **(a) General rule.**—Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue

and such evidence is otherwise admissible pursuant to the rules of evidence.

**(b) Evidentiary proceedings.**—A defendant who proposes to offer evidence of the alleged victim's past sexual conduct pursuant to subsection (a) **shall file a written motion and offer of proof** at the time of trial. If, at the time of trial, the court determines that the motion and offer of proof are sufficient on their faces, the court shall order an in camera hearing and shall make findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in subsection (a).

*Id.* (emphasis added).

Subsection (a) contains an exception allowing admission of an alleged victim's past sexual conduct "where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence." *See id.* at § 3104(a). If a defendant seeks to admit evidence of the victim's past sexual conduct – including pursuant to this exception – the defendant "shall file a written motion and offer of proof at the time of trial." *See id.* at § 3104(b). A failure to file a written motion and offer of proof to admit a victim's prior sexual conduct is fatal to a request to pierce the Rape Shield Law. *See Commonwealth v. Beltz*, 829 A.2d 680, 684 (Pa.Super. 2003); *Commonwealth v. Lampe*, No. 1205 EDA 2019, 2020 WL 6196134, at *7 (Pa.Super. filed October 22, 2020) (unpublished mem.) (declining to review claim that court erred in excluding evidence pursuant to Rape Shield statute where defendant "never filed a written motion and offer of proof in the trial court").[2]

---

[2] *See* Pa.R.A.P. 126(b)(2) (stating non-precedential decisions from this Court filed after May 1, 2019, may be cited for their persuasive value).

Here, it is undisputed that J.F. sought "to offer evidence of the alleged victim's past sexual conduct." 18 Pa.C.S.A. § 3104(a). As such, he was required to "file a written motion and offer of proof at the time of trial." 18 Pa.C.S.A. § 3104(b); *see also Commonwealth v. Kunkle*, 623 A.2d 336, 339 (Pa.Super. 1993) ("[A] defendant who proposes to offer evidence of the alleged victim's past sexual conduct must file a written motion and make a specific offer of proof at the time of trial"). J.F.'s claim that the exception excused his failure to file a written motion and offer of proof is meritless. This Court has "repeatedly stated that a defendant who desires to introduce evidence of the victim's prior sexual conduct **must** file a written motion and make a specific offer of proof prior to trial." *Commonwealth v. Burns*, 988 A.2d 684, 690 (Pa.Super. 2009) (*en banc*) (emphasis added). Since J.F. failed to file a written motion and offer of proof, his claim fails. *Beltz*, 829 A.2d at 684.

For his second issue, J.F. challenges the sufficiency of the evidence to support the finding that he committed burglary. He maintains that the Commonwealth failed to prove that he entered the victim's home with the intent to commit a crime. J.F. points out that there was no evidence that he possessed a weapon, physically threatened the victim, or "that anything in the residence was missing, or even disturbed or out of place." J.F.'s Br. at 22. He directs our attention to his testimony that "he entered the unlocked home and walked up the stairs, he saw the victim waiting in her doorway for him, suggesting she was expecting him." *Id.* at 22-23.

When reviewing a challenge to the sufficiency of the evidence, our standard of review is *de novo*. **Commonwealth v. Hall**, 199 A.3d 954, 960 (Pa.Super. 2018). We must determine whether, when viewed in a light most favorable to the verdict-winner, the evidence at trial and all reasonable inferences from that evidence were sufficient to prove each element of the crime beyond a reasonable doubt. **See Commonwealth v. Neysmith**, 192 A.3d 184, 189 (Pa.Super. 2018); **Hall**, 199 A.3d at 960. The Commonwealth may carry its burden with wholly circumstantial evidence. **See Commonwealth v. Green**, 204 A.3d 469, 484-85 (Pa.Super. 2019).

J.F. was convicted of burglary under 18 Pa.C.S.A. § 3502(a)(1)(i). Under that subsection, a person commits burglary "if, with the intent to commit a crime therein," the person "enters a building or occupied structure, or separately secured or occupied portion thereof, that is adapted for overnight accommodations in which at the time of the offense any person is present and the person commits, attempts or threatens to commit a bodily injury crime therein[.]" 18 Pa.C.S.A. § 3502(a)(1)(i). "The intent to commit a crime after entry may be inferred from the circumstances surrounding the incident" as well as from actions or words. **Commonwealth v. Alston**, 651 A.2d 1092, 1094 (Pa. 1994) (emphasis omitted). When the Commonwealth specifies in its information the crime the defendant intended to commit, "the Commonwealth must prove the requisite intent for that particular crime in order to prove a burglary or attempted burglary." **Commonwealth v. Brown**, 886 A.2d 256, 260 (Pa.Super. 2005).

Here, the Commonwealth alleged that "[t]he defendant did enter an occupied structure. . . with the intention of stalking an ex-girlfriend." Written Allegation, filed 10/16/23, at 2. Thus, to prove burglary, the Commonwealth had to prove J.F. intended to commit crime of stalking, which is statutorily defined as a "bodily injury crime" for purposes of the burglary statute. *See* 18 Pa.C.S.A. § 3502(e). "A person commits the crime of stalking" if the person "engages in a course of conduct or repeatedly commits acts toward another person, including following the person without proper authority, under circumstances which demonstrate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person." 18 Pa.C.S.A. § 2709.1(a)(1).

The evidence sufficiently established that J.F. entered the victim's home without permission as part of a course of conduct intended to cause her substantial emotional distress. The victim testified that she had not spoken to J.F. after July 2023, after he repeatedly raped her and committed sexual extortion. Yet on October 16, 2023, she woke up to J.F. standing in her bedroom. Upon seeing him, she screamed so loudly that it awakened her father. Despite J.F.'s testimony that the victim welcomed him into the home, the court stated that it "found the victim's testimony to be significantly more credible than [J.F.'s] testimony." Pa.R.A.P. 1925(a) Opinion, filed 4/17/24, at 6. The Commonwealth thus sufficiently established J.F. entered the home with the intent to stalk the victim, thus proving he entered with the intent of committing a crime therein. J.F.'s claim is meritless. We thus affirm.

Dispositional orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/13/2025